O'REILLY, EX'R, ETC. v. BURNS ET AL.

1. CONSTRUCTION OF CONTRACTS — MERGER OF UNADJUSTED EQUITIES AND EXTINGUISHMENT OF RIGHTS OF ACTION BY TRANSFER AND SALE.— Where claims, counter-claims and unadjusted equities exist or are asserted by two parties, one against the other, growing out of certain transactions had between them in relation to the

purchase of a fractional portion of a mine, and their respective rights of ownership thereto, together with the claims asserted for profits alleged to have been derived by sales of ores extracted therefrom, with a lien claim by one in the interest of the other for purchase money advanced, answered, by the allegation of payment in full, by the other; and pending this unsettled state of their affairs both parties, on the same day, by separate instruments, convey and assign to a third party all their rights, titles and unadjusted interests and equities in and to the mine, profits past and prospective, including the loan and entire subject-matter, the titles and all claims and equities of the parties are thereby merged in the purchaser, and neither of the original parties has any right of action against the other in respect thereto.

2. IMPEACHMENT OF CONTRACT ON GROUND OF SUPPOSED INEQUITABLE AND UNCONSCIONABLE PROVISIONS — FACTS AND CIRCUMSTANCES PROPER FOR CONSIDERATION. — In case of a mutual contract made between two parties, whereby one agrees to loan the other a certain sum of money to be invested by him in the purchase of an interest in a certain mine, and the other party stipulates to give, as security and consideration for the accommodation, *first*, the assignment of a claim alleged to be due him, then in litigation; *second*, a mortgage upon the mining interest to be purchased, and *third*, an equal interest with the purchaser for all time to come in the profits that may be derived from the working of the purchased interest, the latter stipulation cannot be adjudged void as inequitable and unconscionable, in view of the uncertain character of the securities given and the risks assumed by the lender.

## *Appeal from District Court of Arapahoe County.*

THIS was a proceeding in equity for an accounting by Charles Burns and Nathan Hurd (the latter an assignee of an interest in the subject-matter) against Peter Finnerty. Defendant died pending the proceedings, and his executor, Thomas O'Reilly, was substituted as defendant.

On March 5, 1884, Burns applied to Finnerty for a loan of $1,100, and, as circumstances clearly indicate, for the speculative purchase of an interest in an undeveloped mine in Aspen. Finnerty advanced the money, receiving Burns' promissory note, payable three months after date without interest, and took for his further security a

written agreement, which is in words and figures as follows:

" This article of agreement, made and entered into this 5th day of March, 1884, by and between Charles Burns, party of the first part, and Peter Finnerty, party of the second part, made in duplicate, witnesseth, that whereas, the party of the first part has this day borrowed from the party of the second part the sum of eleven hundred dollars ($1,100), and has executed to the party of the second part his note therefor, in and by which said note the party of the first part has agreed to pay the party of the second part the said sum of money on or before three months from and after the day and date thereof; and whereas, the party of the first part is desirous of securing and indemnifying the party of the second part for and on account of said loan and accommodation:

"Now, therefore, the party of the first part, being the owner of a certain claim against the German National Bank of Denver, for the sum of three thousand two hundred and twenty-five dollars ($3,225), which said claim is represented by a suit now pending and undetermined in one of the courts of the county of Arapahoe and state of Colorado, the party of the first part agrees to assign, and does assign, to the party of the second part, the said claim and action against said bank, to be by him held as security for the payment of the said note; and, in the event that the party of the first part shall fail to make payment thereof, then the party of the second part is, by this agreement, authorized to prosecute said cause to reimburse himself out of the said judgment to be obtained, for the said sum of money as aforesaid advanced to the party of the first part, paying over to the party of the first part the remainder or surplus thereof, whatever the same may be.

"And whereas, the party of the first part intends to purchase certain mining interests in the county of Pitkin, in the state of Colorado, to wit, an interest in the

Durant mine, in Roaring Fork mining district, county of Pitkin and state of Colorado: Now, therefore, the party of the first part does further agree that, so soon as he shall obtain said interest in said mine, he will, for the purpose of securing said claim for said money so advanced, convey and transfer said interest in said Durant mine to him, the party of the second part, to be by him held as security for the loan of said sum of eleven hundred dollars ($1,100) herein specified; and the party of the second part, for and in consideration of the premises herein conveyed, does hereby covenant, stipulate, and agree, to and with said party of the first part, that if the said party of the first part shall pay to him the said sum of money according to the tenor and condition of said note, then the party of the second part shall reassign said claim against said bank, and said action thereon, and at once convey to said party of the first part the said interest in said Durant mine, fully and freely, without any terms or conditions whatsoever; and the party of the second part hereby expressly acknowledges that he takes the said transfer of said properties and choses in action solely and simply as security for the said loan so by him made, and recognizes and acknowledges the title, ownership and interest therein in the party of the first part, subject only to his claim as security thereon for the purposes aforesaid. The party of the second part agrees that he will make no transfer, sale or assignment, either of said claim or of said interest in said mine, to any person or persons whomsoever, without the request or consent of the said party of the first part, until after the breach of the condition of said note; and, in the event the said party of the first part should fail to pay said note according to the terms and conditions thereof, then the party of the second part will confer with the party of the first part as to the best means and method of obtaining his said money, in the event further arrangements cannot between them concerning the same be made.

And the party of the second part does further agree that if during the continuation of said loan the party of the first part should desire to sell said interest in said mine, or to assign said claim against said bank, then the said party of the second part will consent to such sale and disposition; reserving, however, to himself the right to claim the payment of the said loan, so made by him as aforesaid, out of the proceeds of such sale or assignment. In witness whereof the parties have hereunto set their hands and seals the day and year first above written.

"CHARLES BURNS.     [SEAL.]
"PETER FINNERTY.     [SEAL.]

" Attest: D. C. LYLES.

"For the consideration hereinabove expressed, it is mutually stipulated and agreed that in any event, and notwithstanding the payment of the note by said Burns, as in the above contract expressed, the said Peter Finnerty shall be entitled to receive, and shall own as his own property, one-half of any and all profits that may hereafter be realized by said Burns or his assigns from working the one-tenth interest in said Durant mine, for all time to come; but that said Finnerty is not to be at any expense, or contribute any consideration, money or other thing, for developing said mine, or said interest therein.     CHARLES BURNS.     [SEAL.]

" Attest: D. C. LYLES."

After making these articles of agreement, Burns acquired an interest in the Durant mine as therein proposed, and on or about the 11th of March, 1884, conveyed the same to Finnerty as thereby stipulated. The interest thus conveyed was the same as described in the deeds of both Burns and Finnerty to Hyman, hereinafter referred to.

On the 3d of April, 1884, Burns, out of money which he realized as royalties from the sale of ores taken from the mine, paid Finnerty $1,000 upon the note. In the complaint it is alleged that on or about the 15th of

March, 1885, Burns tendered Finnerty the balance of the principal and interest due upon the note. This is denied in the answer. It is also alleged in the complaint that the institution of a certain suit by Finnerty, respecting the property, became necessary, and that in such litigation he was put to certain costs and expenses amounting to about $700. In the answer a much larger expenditure by Finnerty is alleged.

By the replication it is admitted that Burns had realized and received the sum of $1,200 as profits arising from the sale of ores from the mine after the making of the contract of March 5, 1884, and after the execution of said deed from Burns to Finnerty. This is the situation of the parties, and the relations existing between them growing out of the loan.

On August 13, 1886, Finnerty, at the city of Denver, by quitclaim deed executed and delivered, conveyed to David M. Hyman all his right, title and interest in and to an undivided portion of the said mine. On the same day, in the city of New York, by deed executed and delivered, Burns, claiming the entire and unincumbered ownership, conveyed to said David M. Hyman his interest in said mine, as well as his rights and interest in and to ores mined therefrom, and all the proceeds thereof, and all his estate, right, title, interest, possession, claim and demand whatsoever, as well in law as in equity. The descriptions of the interest conveyed are identical, to wit, an undivided 20,094-255,1000 interest.

On the day of the execution of the Burns deed in New York a certain contract was made and entered into by and between Burns and David M. Hyman, in which, referring to the undivided interest conveyed by deed, the following language is used: "The said Charles Burns further represents and agrees that he has made no conveyance of said interest except as herein stated, and that said interest in law and equity belongs to him. He did convey said interest, by way of mortgage, to one Peter

Finnerty, to secure a claim of $1,100. That he has repaid to said Finnerty the sum of $1,000, and tendered him the balance, and that any other claim the said Finnerty may set up to said interest is without consideration, fraudulent and void." The price paid to Burns was $6,000, and that paid to Finnerty was $8,000. Hurd is a party plaintiff by virtue of an assignment of a portion of the interest of the subject-matter of the suit.

The object of the suit, as gathered from the complaint and prayer, is to compel an accounting and payment to the plaintiffs of the money received by Finnerty from Hyman, after deducting such expenses as he had incurred; the contention being that Finnerty was but a mortgagee of the entire undivided part of the mine conveyed to him, and, as such, should account for the whole of the proceeds of the sale made by him, after deducting therefrom the $1,100 and accrued interest, less the $1,000 which had been paid, and also deducting such necessary expenses as he had incurred in and about the trust.

The contention of the defendant is that Finnerty was the mortgagee of only half of the undivided part of the mine conveyed to him by Burns, and that as to the other half, the beneficial interest therein being wholly vested in him, he was to be regarded, in law and in fact, as the substantial owner thereof. By the answer affirmative relief was sought, but was subsequently abandoned.

The court below found that Finnerty received a deed conveying to him the legal title of the whole of said fractional part of said mine, but it nevertheless, in equity, vested in him, as owner of an interest equal to an undivided one-half interest of said fractional part of said mine, and an interest as mortgagee in the remaining undivided one-half of said fractional part, to secure him the repayment from Burns of the amount loaned. The equity of redemption of said remaining undivided half of said fractional part belonged to plaintiff Burns.

The court also found that Finnerty was entitled to

$600 of the $1,200 received by Burns as royalties from working the fractional part of said mine; to $1,200, money necessarily expended by him; and to $100 unpaid upon the note, with interest upon said respective sums, which aggregated $2,183; also that Finnerty, on the 13th of August, and while plaintiff Burns' interest continued in and to said fraction of said mine, conveyed the whole thereof, including the interest of said Burns, to Hyman; that he received $8,000 therefor, and that, of the $8,000 received, Finnerty was entitled to only one-half, and that after deducting from the $4,000, going to Burns, the amount found to be due to him from said Burns, $2,183, that judgment should be entered for the sum of $1,816; and judgment was rendered in favor of said plaintiffs, and against defendant, in accordance with said finding, to which defendant excepted and assigned as error: (1) The court erred in its findings and decision in favor of the plaintiffs and against the defendant. (2) The court erred in not finding and rendering judgment for the defendant and against the plaintiffs.

The following cross-errors are assigned by appellees: (1) The court erred in finding that under the contract entered into between Burns and Finnerty on the 5th of March, 1884, Finnerty acquired a half interest in and to whatever interest Burns purchased in the Durant mine, which was 20,094–225,1000. (2) The court erred in giving the defendant the benefit of the one-half of the $1,200 received as royalty.

Mr. L. S. DIXON, for appellant.

Messrs. L. C. ROCKWELL, W. T. HUGHES and BERTRAM ELLIS, for appellees.

RICHMOND, C.   There is no controversy concerning the loan of the money; the execution of the agreement as above set forth; the execution and delivery of the deed from Burns to Finnerty; the receipt of the royalty of

$1,200; the payment of money in and about the suit by Finnerty; and the execution and delivery of the deeds on the 13th of August, 1886, by both Burns and Finnerty, to David M. Hyman. The only controversy in this case is as to the effect of the *addendum* to the agreement of March 5, 1884, whereby an interest in the profits of the mine was conveyed by Burns to Finnerty.

It is fair to assume that this agreement, including the *addendum*, was made, executed and delivered at the same time. It appears to be attested by the same witness, and it is not disputed by any evidence or in the pleadings. "In the construction of this contract it is proper for the court to place itself in the position of the contracting parties at the time of its execution, and look at the occasion which gave rise to it; the relative position of the parties; their designs as to the objects to be accomplished."

Viewed from this stand-point, the nature of the transaction appears to have been as follows: Burns desired a loan. Finnerty was able and willing to loan. Burns was anxious to secure the repayment of the principal loaned, and, to do so, agreed to make the conveyance of the interest in the mine, and also to assign an interest in a claim against the German National Bank. Both of these securities, it must be admitted, were questionable. From neither was it certain Finnerty would realize the money advanced. Both depended upon contingencies; and, as an additional inducement and consideration for the accommodation, Burns proposed to Finnerty to share equally with him the profits of the interest he should obtain in the Durant mine. Finnerty was, to the best of Burns' ability, secured as to the repayment of the principal, and for the hazard of the loan was to be compensated by prospective profits in the mine. Payment of interest on the loan was not contemplated.

It is contended that this construction of the transaction cannot be sustained, as it is inequitable and unconscion-

able. The intention of the parties and the legal effect of the writings cannot thus be summarily disposed of. When the nature of the transaction is considered, and the uncertainty attending it, and the chance of losing the entire investment, the contract as above construed does not appear to have been unreasonable or inequitable. Were mining transactions, in regard to the acquiring of interests in undeveloped property, to be judged by results afterwards, instead of conditions as they existed at the time of the investment, many titles of far greater value than the one in question would be annulled for inadequacy of consideration, where the amount invested was much less in the first instance than in this case.

Finnerty, by the conveyance, took the legal title, subject to defeasance in the payment of the money loaned to Burns. Upon such payment the legal title of the entire interest was to re-invest in Burns, while Finnerty was for all time to receive the profits of one-half the interest, if there should be any, and the control and management was to remain in Burns. But such profits were to be net results, while Finnerty was not to be chargeable with any costs of development. After the payment of the $1,000, Finnerty's interest was a demand for the further sum of $100 due, and an ownership of one-half of the profits resulting from the mining for all or an indefinite time, until the ore should be exhausted. In this view of the case, we do not consider the question which conveyance (Burns to Hyman, or Finnerty to Hyman) was prior in point of time, or whether they were contemporaneous, important. Each dealt for himself, and each had an assignable interest. By the deed of Burns he conveyed to Hyman his interest in the mines, to the ores mined therefrom, to the proceeds of the same, "and all his estate, right, title, interest, possession, claim and demand whatsoever, as well in law as in equity." By the contract, executed by Burns to Hyman on the same date as the deed, he agrees or covenants that "he did

convey said interest by way of mortgage to one Peter
Finnerty to secure a claim of $1,100; that he had repaid
to said Finnerty the sum of $1,000, and tendered him the
balance; and that any other claim the said Finnerty may
set up to said interest is without consideration, fraudu-
lent and void." By the conveyance his entire interest in
the property, legal and equitable, is transferred to Hy-
man. Hyman was substituted in his stead, and had suc-
ceeded to all existing equities in connection with Finnerty;
and, for further certainty or assurance in the contract,
he set out and defined what the existing equities were
between himself and Finnerty. The deed and contract
were ample to and did divest him of all interest, and in-
vest Hyman, not only with the legal and equitable in-
terest of Burns, but by the substitution a right to adjust
the equities theretofore existing between Burns and Fin-
nerty.

On the same date, Hyman, through his agent in Den-
ver, purchased and received a conveyance from Finnerty
of the entire interest, including unadjusted rights and
equities existing between him and Burns. The transac-
tions were separate and distinct; each dealing with his
own interest regardless of the interest of the others.

By the two conveyances to Hyman, the titles were
merged, and the equities merged and extinguished.
Burns, having released to Hyman all his interest, had
no further claim against or matters to adjust with Fin-
nerty. If Hyman saw fit, notwithstanding Burns' agree-
ment, to recognize a greater interest in Finnerty than
that asserted by Burns, and purchase and pay for it, it
was entirely a matter of his own, in which Burns could
have no interest, unless called upon by Hyman to make
good his assertion of want of interest in Finnerty, as
stated in the contract. Finnerty, at the time of the sale,
and in making the conveyance, undoubtedly took into
consideration the balance due him from Burns, the
amount of royalty due for ore extracted, and the amount

he was out for money advanced in litigation; and, in making his price in a lump sum, received what he considered compensation for his existing claims and interest in the property, and it was paid. Burns, by his conveyance and agreement, was estopped to deny that all existing rights and claims had not passed to Hyman. It follows that Burns had no right to participate in any way in the transaction between Finnerty and Hyman, or the proceeds of it, and had no cause of action against Finnerty. The transfer must be regarded as an assignment of all rights of action. We are therefore of the opinion that, at the time of the institution of this proceeding, Burns had no right of action against the defendant Finnerty, and, in view of the fact that affirmative relief asked by the answer has been abandoned, the judgment should be reversed, and cause remanded, with instructions to the court below to dismiss the action.

Reed and Pattison, CC., concur.

Per Curiam. For the reasons stated in the foregoing opinion the judgment is reversed, and the cause remanded, with directions to dismiss the action.

*Reversed.*

Mr. Justice Elliott, having presided at the trial below, did not participate in this decision.