PAUL L. TARARA v. NOVELTY ELECTRIC MANUFACTURING COMPANY AND OTHERS.[1]

February 23, 1917.

Nos. 20,170—(275).

**Dismissal of action — admission and exclusion of evidence.**

Plaintiff undertook to rescind agreements for the purchase of the majority of the capital stock in the defendant corporation for the fraud practiced upon him by the officers of the corporation, the other defendants, inducing his entering the agreement and paying money thereunder. In this action to recover the money paid and damages it is *held*:

(1) The refusal of the court to dismiss the action as to the officers, the individual defendants, was not error. The action is for money had and received. No part of the money sought to be recovered was to go to the corporation. It was received by the defendant Oswald, and it was presumably still in the possession and control of the officers who conducted the deal.

(2) No error was made in receiving testimony of one of the officers of the corporation as to representations concerning the value of a patent the corporation purported to own, nor in receiving the cartons displaying the number of a patent which presumably purported to cover the process for the manufacture of the electric batteries contained in such cartons.

(3) The evidence is sufficient to support the verdict that defendants

[1]Reported in 161 N. W. 409.

made the two misrepresentations submitted to the jury, and that plaintiff relied thereon in making the agreements.

(4) The trial court ruled correctly when excluding proof of bills left unpaid by plaintiff and incurred by him in operating the business covered by the agreements prior to his discovery of the fraud alleged.

(5) But the court erroneously permitted the jury to include damages to plaintiff for expenses and value of lost time.

Action in the district court for Hennepin county to recover $2,000 obtained from plaintiff by fraudulent representations and $3,000 damages. The answer denied the fraud and claimed a forfeiture of the money paid by plaintiff by reason of his failure to perform his contracts with defendants. The case was tried before Waite, J., who when plaintiff rested denied the motion of the individual defendants to dismiss the action as to them and at the close of the testimony plaintiff's motion for a directed verdict for $2,140, and a jury which returned a verdict for that amount. From an order denying their motion for a new trial, defendants appealed. Remanded with directions to reduce the verdict to $2,000.

*Sam Levy,* for appellants.
*Eugene S. Bibb,* for respondent.

HOLT, J.

In January, 1914, the Novelty Electric Manufacturing Company, a corporation, was engaged in the manufacture and sale of electric batteries and owned suitable machines and equipment therefor. During that month the officers of the corporation began negotiations for a sale of the majority of the capital stock to plaintiff, which culminated in the execution of two written agreements, one of which was executed by plaintiff and the corporation, and the other by defendant Oswald, as trustee for the majority of the stockholders, and plaintiff. The two agreements supplement each other. The first recited that plaintiff had agreed to purchase from Oswald, as trustee for the majority of stockholders of the corporation, the interest of such stockholders therein and, pending the full payment of the purchase price, plaintiff was to conduct the business of the plant at his own expense, but in the corporate name under supervision of its board of directors. When the agreed purchase price had been paid by him to the trustee, a special meeting of the board of directors

should be called, at which time plaintiff as a majority stockholder was to elect such directors as he might desire. The patent rights, under which the batteries were being manufactured, were to remain in the corporation as well as all machinery, fixtures and tools. The other contract with the trustee recited that plaintiff was desirous of buying all the rights of the corporation in and to the business of manufacturing electric batteries, together with fixtures, tools and machinery used in connection therewith, for $10,000; that the majority of the stockholders, at a duly-held meeting, had adopted a resolution accepting such offer, and had authorized the directors and officers to carry it out, and pursuant thereto 288 of the 344 shares issued, of the capital stock of the corporation, had been placed in the hands of Oswald as trustee; that plaintiff had paid $2,000 of the purchase price; and that the balance should be paid at stated times, and when so paid the said shares should be delivered to plaintiff. Time was of the essence of the agreement, and in case of default the payments made were to be forfeited.

Plaintiff brought this action against the corporation and its officers to recover what he had parted with in the transaction, on the alleged grounds that he had been induced to enter the contract and pay $2,000 thereon through certain specified false and fraudulent representations made to him by defendants; that, as soon as he had discovered the fraud practiced, he tendered back what he had received and demanded a return of the money paid, but that defendants had declined to restore any part. In addition to a return of the $2,000 paid, plaintiff also asked for $3,000 damages. Defendants answered, denying the fraud and alleging nonperformance by plaintiff of his part of the contract and thereby claiming a forfeiture of the payments made. The court refused to let the jury consider any of the alleged false representations except these two: That the defendants falsely represented that the corporation owned the patent right No. 682,068, under which patent the electric batteries manufactured by it were protected, and that they falsely represented that they then had orders for the manufacture of more than 1,000 electric batteries. The court also permitted the jury to include in the verdict, if one was found for plaintiff, such amount as plaintiff had lost by reason of the value of the time spent, and the amount expended during the period he operated the plant prior to his discovery of the fraud practiced on him.

Plaintiff's estimate of the value of his time and expenses was $140. Plaintiff's brief states that the jury rendered a verdict in his favor for $2,431. Were it not for the admission the amount or form of the verdict could not be considered on the appeal, for it is not made a part of the record, as required by the rules, nor has the original been transmitted to this court. Defendants appeal from the order denying them a new trial.

The first error assigned raises the question whether the defendants, other than the corporation, were entitled to a dismissal when plaintiff rested, on the ground that they had only acted as officers of the corporation and had not personally received any part of the money paid by plaintiff. The defendant Oswald, in addition to being president of the corporation, was the trustee in the transaction. He receipted as such for the moneys paid by plaintiff, and there is no evidence that he turned over the money to the corporation. In fact, the deal does not contemplate that any of the purchase price to be paid by plaintiff was to go to the corporation. It is to be inferred that ultimately it was to go to the owners of the 288 shares of stock which plaintiff was to receive. Clearly the court ruled correctly when the motion to dismiss as to Oswald was denied, and we think, for that matter, as to any defendant whom the jury might hold guilty of the fraudulent representations upon which plaintiff parted with his money, for there is no evidence that the ones who made the misrepresentations paid it over to any one else after it came within their control. But irrespective of these considerations it seems the officers here would be personally liable. Hedin v. Minneapolis M. & S. Inst. 62 Minn. 146, 64 N. W. 158; Hedden v. Griffin, 136 Mass. 229, 49 Am. Rep. 158, 35 L.R.A. 417, 54 Am. St. 628, and particularly Mack v. Latta, 178 N. Y. 525, 71 N. E. 97, 67 L.R.A. 126.

There was no error in permitting testimony concerning representations made by Oswald as to the value of the patents involved. Being president of the corporation that was held out as the owner of the patents, he presumably had better knowledge of their value than plaintiff, a stranger. Moreover, it was admissible as proof of false representations even if Oswald had no knowledge whatever of their value. Likewise the cartons, containing the batteries manufactured by the corporation upon which appeared printed the patent No. 682,068, were properly received in evi-

dence. It is so universally the custom to conspicuously place upon an article protected by a patent the number of such patent that courts should take notice thereof.

The important questions are whether there was evidence to go to the jury on the two fraudulent representations submitted by the court, and, if so, whether the jury could rightfully find that plaintiff relied thereon in making the deal. We have attentively examined all the evidence bearing on these propositions, and conclude that the verdict based thereon should not be set aside, approved as it is by the trial court. Manifestly plaintiff was inexperienced in the manufacturing business. Because of the high business standing of defendants, he was more inclined to take their word than had they been of less reputation. But surely that situation does not help defendants to escape the consequences of the alleged fraud, if guilty thereof. It is true plaintiff had opportunity to ascertain, before he paid his money, that the patent mentioned had nothing to do with the process of manufacturing electric batteries, and could have asked defendants to produce the orders they said had been procured, but the law does not deny relief because he happened to be not as prudent and cautious as a more experienced person might be. The one who makes false statements, concerning the subject matter of a deal, is hardly in a position to say that the other party should not have taken him at his word. Maxfield v. Schwartz, 45 Minn. 150, 47 N. W. 448, 10 L.R.A.606; Erickson v. Fisher, 51 Minn. 300, 53 N. W. 638. It is argued that plaintiff was given full opportunity to examine the manufacturing plant and that the contracts finally signed were passed upon by plaintiff's attorney. This appears to be the case, but the fraudulent representations left to the jury relate not to the machinery or the condition of the plant, or to the terms of the contract. They concern the inducement for entering into a contract, and only in exceptional cases, perhaps, are such matters embodied in the written instrument. Furthermore, partial investigation and reliance in part upon representations do not preclude relief. Freeman v. F. P. Harbaugh Co. 114 Minn. 283, 130 N. W. 1110. Plaintiff testified that he relied upon defendants' representation in making the deal. We think none of the points or arguments made by defendants, in respect to the assignments of error now under discussion, survived the adverse finding of the jury.

This was an action to recover what plaintiff had parted with on a contract which he had undertaken to rescind by his own act. To make the act effective to support an action at law, it is said, plaintiff must show that, when the notice of rescission was given, he tendered back what he had got and offered to place the defendant *in statu quo*. Defendants claim this was not done, because bills incurred while plaintiff was operating the plant were left unpaid. Defendants alleged the existence of such bills for which the corporation would be holden, but proof thereof was ruled out by the court. We think the court was right. Clark v. Wells, 127 Minn. 353, 149 N. W. 547, is not authority for the proposition that all bills incurred in operating this business, prior to plaintiff's discovery of the fraud practiced upon him, must be paid before he is permitted to rescind by his own act.

But the same reason that excluded these bills should have excluded the value of plaintiff's lost time and expenses. This brings up the error assigned upon the court's charge, wherein the jury were permitted to allow the two last items, which plaintiff estimated at $140. There would seem to be justice in saying that the two items, if to be taken account of at all, should be considered only in an action where the unpaid bills incurred by plaintiff during the same time may be adjusted. Theoretically this action is for money had and received by defendants. They received no property. When the rescission occurred the contracts were wiped out and the terms thereof should not be looked to as basis for damages or recovery. There is no evidence that defendants were in any manner enriched, either by money or property, on account of the time plaintiff spent at the plant or from the money expended by him in its operation. The $140 items are in the nature of damages. We therefore do not think the court should have permitted the jury to include them in the verdict. The only decision that has come to our attention, countenancing a recovery of damages in an action of this sort, is McRae v. Lonsby, 130 Fed. 17, 64 C. C. A. 385, but we think it should not be followed here, where the court excluded items of loss falling on defendants and so closely connected with plaintiff's alleged damages as, perhaps, to serve as an offset thereto. Without deciding that in no case of a suit for money had and received may there be joined a demand for special damages, incurred prior to discovery of the fraud upon which the party has

undertaken to rescind, we consider the facts in this case do not warrant a recovery for such damages.

There are several other assignments of error. We have examined them all and conclude that none are of sufficient importance to merit discussion, except, it might be stated that, conceding the notice to produce the books of the corporation was too general to permit oral testimony of the contents of the minute book not produced, the reception of such oral testimony could not possibly have prejudiced defendants, for the only fact elicited was that it specified a patent as being No. 682,068, a fact not seriously in dispute and conclusively proven by other evidence.

We have not adverted to the evidence showing that when plaintiff gave notice of rescission he turned over the key and shop to defendants, who evidently accepted the same and shortly thereafter disposed of the property. In that situation some suspicion attaches that the defense is not meritorious.

The case is remanded with directions to the court to reduce the verdict to $2,000 and interest from the time the money was paid by plaintiff and enter judgment upon the verdict so reduced.