## No. 19,844.

JOHN A. MEREDITH *v.* RICHARD H. RAMSDELL
(384 P. [2d] 941)

Decided July 15, 1963.    Rehearing denied September 16, 1963.

Messrs. SEARS and GOLDSMITH, for plaintiff in error.

Mr. ROBERT SUNSHINE, Mr. H. D. REED, for defendant in error.

*In Department.*

Opinion by MR. CHIEF JUSTICE FRANTZ.

ORIGINALLY Meredith sued All State Oil Corporation and Ramsdell. His complaint was in five counts, the first four of which were directed against All State for rescission of two instruments which purported to convey interests in two oil and gas leases in Logan County, and the fifth of which sought damages from Ramsdell by reason of his alleged fraud.

Count one related to one of the instruments and Count two to the other, and therein it was alleged that those instruments were void for vagueness, inconsistency and unintelligibility, and further that each was voidable for breaches thereof committed by All State. The third count alleged failure on the part of All State to comply with certain requirements of the Colorado Securities Act. The fourth count charged All State with fraud, warranting a court-decreed avoidance of the instruments.

In his fifth count Meredith accused Ramsdell of fraud in the sale to him of the two instruments, by which

Meredith was entitled to recover damages from Ramsdell individually. Also alleged as grounds for the recovery under this count was Ramsdell's failure to register as a broker or salesman as required by C.R.S. '53, 125-2-9.

The consideration which moved from Meredith to All State in the transaction was $3500.00, and it is this sum which Meredith would recover from the defendants, as restitution in the suit for rescission against All State, and as damages against Ramsdell. Regardless of how, or by whom, it is adjudged owing, Meredith seeks only to be made whole in the sum of $3500.00.

Trial to the court resulted in a determination that All State had breached the contract and that Meredith therefore was entitled to a decree of rescission on Counts one and two. The trial court declined to decide the third count, which was predicated upon a violation of C.R.S. '53, 125-2-9, a section of the Colorado Securities Act.

Regarding the fraud alleged to have been committed by All State in the fourth count and Ramsdell in the fifth count, the trial court stated: "As the court views the matter, representations were made, false or not, most of which were to be performed in the future." It continued by saying that Meredith "paid out $3500 to All State for these contracts for something that was to be performed in the future." "These contracts" had reference to Exhibits 1 and 2.

The trial court held that Exhibit 2, which provided that it would become effective in the event the well contracted for in Exhibit 1 failed to become a commercial producer, created "a conditional future proposition" which cannot be the subject of an actionable misrepresentation.

In the consideration of Exhibits 1 and 2, the trial court found that the first was executed at a time when All State had no title to the oil and gas lease forming its subject matter, and that it did not acquire such title until some two months later. It found that All State did

not have, at the time of the execution of Exhibit 2 or at any time thereafter, title to, or any interest in, the oil and gas lease involved in that instrument.

Meredith prosecutes this writ of error, directed solely to the disposition of the fifth count, in which the trial court held against him on the matter of Ramsdell's individual liability. Our resolution of this controversy depends on answers to two questions: (1) was there evidence of actionable misrepresentations; and (2), if there was, may a person defrauded thereby, having obtained a decree of rescission against the principal, have a judgment for damages against the agent?

Exhibits 1 and 2 were executed on July 9, 1958. Ramsdell represented All State in the negotiations preceding their execution, and he signed them on behalf of All State as its president.

By Exhibit 1, All State conveyed a 6/64ths interest in the Green Prospect well, subject to a 1/16th of 7/8ths overriding royalty. It is recited therein that ownership of the oil lease was acquired from British American Oil Co. Ramsdell testified that ownership of the lease was actually acquired three months after the execution of Exhibit 1, and that he knew the statement of ownership was false on July 9, 1958.

Documentary evidence indicates that, when obtained, All State got a less interest in the well than that described in Exhibit 1. British American Oil Co. have reserved a 1/8th of 8/8ths royalty.

Exhibit 2, relating to another well, was entered into at the instance of Meredith. It, too, recited the acquisition of an oil lease from British American Oil Co., and the ownership of the lease by All State. Ramsdell admitted that All State never had a right or interest in the lease. Meredith had subscribed to Exhibit 1 only after there had been agreement as to Exhibit 2. By its terms, Exhibit 2 would become operative only if the well in Exhibit 1 proved not to be a commercial producer. There is

no question that the well referred to in Exhibit 1 was not such a producer.

Certain prefatory observations should be made before we proceed to the disposition of the axial questions of this case. A statement of them puts these questions and their resolution in proper perspective.

■ Exhibits 1 and 2, executed at the same time and interdependently made, form one contract. It is elementary that an agreement may be evidenced by several writings, which, when connected, show the parties, subject matter, terms, and consideration. 17 C.J.S., p. 408, §58. Such concept has been applied to oil and gas contracts. 58 C.J.S., p. 604, §225. And in the related field—mining—this court has construed several writings as constituting one contract. *O'Reilly v. Burns,* 14 Colo. 7, 22 Pac. 1090. See *Gibbs v. Wallace,* 58 Colo. 364, 147 Pac. 686.

■ It follows then that fraud as to either instrument infects the whole transaction, since we are dealing with one contract. Where a contract involves several parts evidenced by several instruments, yet they make up but one transaction, fraud in one part vitiates the entire agreement at the election of the defrauded party. *Gyles v. Stadel,* 252 Mich. 349, 233 N.W. 339; *Dykes v. Blake,* 4 Bing. N. Cas. 463, 33 E.C.L. 806; 132 Reprint 866; 91 C.J.S., p. 910, §54.

It is undisputed that All State never acquired or had an interest in the well described in Exhibit 2. It appears that Ramsdell on behalf of All State entertained an expectation of obtaining an interest. Ownership in the context of this case was a relevant fact within the meaning of the law of fraud. *O. K. Uranium Development Co. v. Miller,* 140 Colo. 490, 345 P. (2d) 382.

■ A person who misleads another by word or act to believe that a fact exists, when he knows it does not, is guilty of fraud, notwithstanding he entertains a belief and expectation that it will come into existence. *Hubbard v. Weare,* 79 Iowa 678, 44 N.W. 915; *Grosh v. Ivan-*

*hoe Land & Imp. Co.,* 95 Va. 161, 27 S.E. 841; *Kent Jewelry Corp. v. Kiefer,* 119 N.Y.S. (2d) 242. Anticipating the subsequent acquisition of title to the property, as in this case, comes within the rule.

Having obtained a decree of rescission against All State, could Meredith in the same action have judgment for damages against Ramsdell, All State's agent? On the theory that Meredith cannot both affirm and disaffirm the contract, Ramsdell would have this Court answer the question negatively. In opposition, Meredith contends that this case does not involve an election of remedies, and that the suit was properly initiated and pursued.

█ Meredith cannot have two satisfactions for the same injury. It is axiomatic that for an injury a party may have one satisfaction, whether the proceeding be in equity or at law. *Spaulding Co. v. La Plata County,* 63 Colo. 438, 168 Pac. 34; *German National Bank v. Best,* 32 Colo. 192, 75 Pac. 398; *Nash v. Minnesota Ins. & Trust Co.,* 163 Mass. 574, 40 N.E. 1039, 47 Am. S.R. 489.

In connection with the rule that there can be but one satisfaction for an injury, it should be noted that Ramsdell testified that All State had been "out of business" since about March, 1959, and that it had no assets. Being in such plight, Meredith could not obtain satisfaction from All State. May he seek satisfaction from Ramsdell?

█ Meredith sought and obtained a rescission of the contract to which All State was the other party. The relief thus granted was equitable. But it is the peculiar genius of equity that a decree be fashioned in which full justice is done; equity does not adopt half-measures. "Equity delights to do justice, and that not by halves." The significance of this maxim of equity is that it will act pervasively, once it has taken hold of a case, in order to avoid adjudication by piecemeal. *Doherty & Co. v. Steele,* 71 Colo. 33, 204 Pac. 77; *J. C. Turner Lumber Co. v. Lacey,* 193 N.Y.S. 656; see 5 Williston on Contracts, pp. 4281 et seq. §1528 (Rev. ed.); *Cahill v. Read-*

*on,* 85 Colo. 9, 273 Pac. 653; *Whittemore v. Wilkins,* 77 Colo. 533, 238 Pac. 69.

■ The pervasiveness of a decree in equity, unlike a judgment in a court of law which always acts upon conditions as they existed at the time the action was commenced, extends to conditions as they are at the close of litigation. 21 C.J. p. 663, §846; 30 C.J.S., p. 990, §600; *Denver Land Co. v. Moffat Tunnel Imp. Dist.,* 92 Colo. 43, 18 P. (2d) 445.

Once equity acted in this case, it would see the litigation through in such manner as would achieve full justice; it would adjudicate completely the problems arising from the transaction involved in controversy. It would operate on the facts as they appeared at the conclusion of the case, and in this respect would determine the liability of Ramsdell as soon as it became apparent that a decree of rescission as against All State would not provide the satisfaction to which Meredith would be entitled on execution of the decree.

[7] A determination that Ramsdell was liable would not violate the doctrine relating to election of remedies. "The rescission of a contract for fraud does not prevent a recovery of damages from one who participated in the fraud but was not a party to the contract. At least such is the rule where the complaining party has 'failed to obtain satisfaction' 'either by a restoration or recovery of the consideration or otherwise.' " 24 Am. Jur. p. 39, §211.

That a party to a contract obtains a decree canceling a deed for fraud does not preclude him from recovering for deceit against a third party who procured the execution of the deed, *Kuechle v. Springer,* 145 Ill. App. 127. In accord are *Nash v. Minnesota Title Ins. & Trust Co.,* supra; *Parsons v. Rice,* 81 Mont. 509, 264 Pac. 396; *Schelske v. Smith,* 55 S.D. 502, 226 N.W. 734; *Godefroy v. Reilly,* 146 Wash. 257, 262 Pac. 639.

There is a substantial body of law which holds that the plaintiff's rescission or attempt to rescind the con-

tract on account of the fraud does not defeat his right to recover damages from a third party so long as he has failed to obtain *satisfaction for his injury,* either by a restoration or recovery of the consideration, or otherwise. *Nash v. Minnesota Title Ins. & Trust Co.,* supra; *Kuechle v. Springer,* supra; *Pridmore v. Steneck,* 120 N.J.E. 567, 186 Atl. 513; *Mack v. Latta,* 178 N.Y. 525, 71 N.E. 97, 67 L.R.A. 126; *J. C. Turner Lumber Co. v. Lacey,* supra. See *Tarara v. Novelty Elec. Mfg. Co.,* 136 Minn. 216, 161 N.W. 409; *Leventhal v. Liberman,* 262 N.Y. 209, 186 N.E. 675; *Smith v. Krueger,* 71 N.J.Eq. 531, 63 Atl. 850; *Henderson v. Lacon,* L.R. (Eng.) Vol. V, p. 249.

Nowhere is the applicable rule better stated than in the case of *J. C. Turner Lumber Co. v. Lacey,* supra. From that case we adopt the rule "that, while, in a suit in equity for a rescission against the principal, a cause of action for damages against the agent who made the false and fraudulent representations may be united in the same complaint, separate actions cannot be maintained at the same time, one against the principal for rescission, and the other against the agent for damages; the reason being that the plaintiff in the action for rescission, if successful, would get back all he had paid, and hence would have a claim for damages only if he failed wholly or partly to recover all he had paid out, with interest. One of the fundamental distinctions between a suit in equity and an action at law is that in the former relief is given upon the facts as they exist on the date of the decree, while in an action at law the judgment deals with facts as they existed at the time of the commencement of the action. Hence, until the fact that the plaintiff had suffered damage was demonstrated by the result of the equity suit, no action at law could be maintained for damages."

■ It should be observed that a defrauded party may proceed against the principal and the agent, seeking rescission against the principal and damages against the

agent who procured the execution of the contract: Such defrauded party can have one satisfaction, and failing to obtain restitution either wholly or partly from the principal, may recover from the agent such sum as will constitute restoration to status quo. Such will constitute the damages recoverable against the agent.

The judgment is reversed as to the claim against Ramsdell, and the trial court is directed to grant a new trial in relation thereto.

MR. JUSTICE DAY and MR. JUSTICE McWILLIAMS concur.