## No. 9450.

### DOHERTY & COMPANY, ET AL. *v.* STEELE, ET AL.

Decided January 6, 1922. Rehearing denied February 6, 1922.

Action for the return of irrigation district bonds. Judgment for plaintiffs.

### *Affirmed.*

1. ACTIONS—*Irrigation Districts—Notice.* Where a tax-payer and land owner in an irrigation district brings a suit to compel the return to the district of its bonds, and the district, though in the case as a defendant from the beginning, makes no objection, but asks the same relief as the plaintiff, other parties cannot object that proper notice was not given the district before the commencement of the suit.

2. IRRIGATION DISTRICTS—*Bonds—Wrongful Delivery.* If bonds of an irrigation district are so wrongfully delivered that they ought

to be returned, then they, to whom they are delivered should return them, and they cannot relieve themselves of the obligation by transferring them to others, whether those others be holders in due course or not.

3.    *Bonds—Return to District.* The fact that the district is not liable on bonds which were wrongfully delivered, is one reason why they should be returned.

4.    ACTIONS—*Equity.* There is no distinction in equity between a cause of action *ex contractu* and *ex delicto.* Where equitable jurisdiction attaches and there is ground for relief alleged and proven, such jurisdiction will be retained to do complete justice.

5.    EQUITY—*Complaint.* In an action for the return of irrigation district bonds by a tax payer and land owner in the district, the fact that the complaint did not offer to do equity is immaterial under the facts and circumstances in this case.

6.    IRRIGATION DISTRICTS—*Bonds—Return.* In an action for the return of irrigation district bonds, a third party to whom they were delivered, having full knowledge of their infirmities should return them, regardless of the relations existing between himself and the party to whom they were originally delivered.

7.    *Bonds—Insufficient Consideration.* The delivery of certain rights of way of nominal value to an irrigation district, held not a sufficient consideration for a transfer of bonds of the district of the face value of $250,000.

    If the bonds were delivered as an advance payment in contemplation of the completion of a contract for the construction and delivery of an irrigation system, which was never fulfilled, equity requires the return of the bonds.

8.    *Bonds—Delivery—Res judicata.* The contention that the question of proper delivery of irrigation district bonds had been determined in a prior action in another court, held not supported by the record.

9.    *Bonds—Conditional Delivery.* Bonds of an irrigation district delivered to one conditioned upon the completion and delivery to the district of an irrigation system, should be returned to the district by one receiving them with notice, where the condition was never fulfilled.

10.    EMINENT DOMAIN—*Possession of Right of Way—Effect.* Where a right of way for a ditch has been condemned and the ditch constructed and maintained on the ground for years, it consti-

tutes a taking of the property for which the owner must be paid.

11. IRRIGATION DISTRICTS—*Bonds—Judgment for Return or Par Value.* It was not error to enter judgment for the par value of irrigation district bonds, in case the bonds could not be returned to the district.

*Error to the District Court of the City and County of Denver, Hon. Charles C. Butler, Judge.*

Mr. CHARLES F. TEW, MESSRS. BARDWELL, HECOX, MC-COMB & STRONG, Mr. PERRY D. ROSE, Mr. HENRY MCALLISTER, JR., Mr. PLATT ROGERS, for plaintiffs in error.

Mr. HUBERT L. SHATTUCK, Messrs. MELVILLE, MELVILLE & WALTON, for defendants in error.

*En banc.*

MR. JUSTICE DENISON delivered the opinion of the court.

STEELE was plaintiff below and obtained a decree requiring Doherty & Company to return to the East Denver Irrigation District certain bonds of that district which had been delivered to them in partial performance of a contract. The facts are fully set forth in the case of *The Antero & Lost Park Reservoir Co., et al. v. Lowe,* 69 Colo. 409, 194 Pac. 945.

Briefly, the district, in 1910, by its board of directors, entered into a contract with a corporation which we will call the Promotion Company, for the purchase of a completed system of irrigation,—reservoirs, canals, gates, etc., —specified in detail in the contract, with certain water and water rights, all to be paid for by the district in bonds of the district, to the amount of $3,000,000. The contract provided that the system should be completed and turned over to the district not later than June 1st, 1913. The Promotion Company had a contract with The Antero and Lost Park Reservoir Company for the purchase of its system for $1,500,000, and were to extend and enlarge it to satisfy the specifications of the contract. In August,

1912, a supplementary contract was made by the authority of the electors of the district and by that contract $250,000 of the par value of the $3,000,000 bond issue was authorized to be delivered to the Promotion Company upon the transfer to the district by the Promotion Company of a certain small ditch and certain rights of way for ditches, the whole value of which did not exceed $6,000; and the time for the completion of the system was extended to January 1st, 1914. The claim of plaintiff was that this arrangement was a subterfuge to avoid the express provisions of the statute in pursuance of which the transaction was had so as to make the advances of bonds on the purchase price of the completed system. In view of the decision we have reached, however, that is immaterial.

No work of any importance was done by the Promotion Company. For a little work, however, they obtained $18,000 of the bonds and later $29,000 advance payment on the reservoir called the Irondale, which contained only 800 acre feet of water and was of no value except in connection with the completed system.

The Promotion Company assigned its interests to one Lucas, who, February 3rd, 1913, obtained what was called a modified contract which in the case of *Antero &c. Co. v. Lowe* we held was void. Under the authority of this void contract $713,500 par value of the district bonds were delivered to Lucas and by him to Doherty & Company, and Lucas, who, it is claimed, was merely a dummy for Doherty & Company, did a large amount of work, but failed to complete the system and has never done so.

The above covers all the essential particulars.

Steele, a taxpayer and landowner of the district, brought this suit on behalf of himself and others, to compel the return of the bonds so delivered, and the court granted the decree upon the theory that the bonds were delivered as an advance payment upon a contract for the purchase of property which, unless completed, was of no value to

the district, and which was to be completed and delivered as a whole.

In this interpretation of the contracts we agree with the court below. It is manifest that the system unless completed was of no value whatever to the district, that it was ruinous to the district to have the completion fail and that the contract required a complete system to be delivered before payment, and we regard those sections of the statute concerning purchase of completed systems as intended to prevent such difficulties as appear in this case.

We notice nine points which the plaintiffs in error have argued:

1. They say that Steele, the plaintiff taxpayer, had no right to maintain the action. The principal grounds of this argument are that the notice, required to be given to the directors before a taxpayer is entitled to bring such an action, was not given, or was not sufficient, and that the choice of remedies was within the discretion of the board of directors and could not be usurped by a taxpayer or by the court.

It is sufficient answer to this that the district itself urged before the court below and urges here the same relief which is asked by Steele, who asks no relief other than that asked by the district. The district, although in the case from the beginning, has never made objection. On what reasonable ground can the other defendants now claim that the district was entitled to the exercise of the discretion of the directors before this suit was begun? Have they not exercised it and are they not exercising it now?

We have been able to find no authority on this question of the attitude of the district; but, if we reverse the case on this ground, we say to the district: "You may not have what you ask because you are not asking for it." "You cannot have what you ask because you have had no opportunity to decide whether you will ask for it."

We cannot see that it makes any difference when the district had exercised its discretion, if it is doing so now. It has not complained of its deprivation, and those who are complaining are doing so against the earnest protest and to the injury of the district.

To dismiss this bill because the plaintiff, Steele, did not take the right formal step at the start, when the real purpose of that step has been accomplished, would be to "twist the strands of precedent into a rope with which to strangle Justice." Our opinion is that this point is not well taken.

The case of *Antero Co. v. Lowe, et al.,* is not in conflict with this conclusion. The plaintiffs in that case, taxpayers of this same district, were seeking to compel the district, against its will, to enforce specific performance of these very contracts, a manifest attempt to usurp the discretion of the district authorities; and in all the Colorado cases cited by plaintiff in error the corporation was resisting the action of the taxpayer or stockholder.

2. It is claimed that the complaint states no cause of action against Doherty & Company because the district seeks the recovery of the bonds and an injunction against taxes to pay them; that that remedy is inconsistent with and a renunciation of the remedy of recovery of the value of the bonds.

If the bonds were so wrongfully delivered that they ought to be returned, then they to whom they were so delivered ought to return them. They cannot relieve themselves of that obligation by transferring the bonds to others, whether those others be holders in due course or not. They are in a position like that of one who has received another's goods and sold them and thus converted them to his own use.

If the bonds were delivered conditionally,· as an advance, as the trial court found, then, upon the fulfillment of the condition, i. e., the failure to convey a completed system, they to whom they were so delivered are under obligation to return them, and they cannot relieve themselves of that

duty by a transfer to others, holders in due course or otherwise. If they to whom the bonds were delivered have put it beyond their power to return them, equity is not therefore powerless but will require them to compensate the obligors, according to the elementary equity practice. The equity of the case, stripped of its details, we attempt to illustrate under the discussion of point 7.

3. It is claimed there is no cause of action against Doherty & Company because the complaint shows that the district is not liable upon the bonds. That is one of the reasons why Doherty & Company are obligated to return the bonds, which the decree orders them to do.

4. It is objected that the action was *ex delicto* and the judgment *ex contractu*. It is not important in equity to determine to which grand division of common law actions, *ex delicto* or *ex contractu,* an action belongs. The avoidance of the contract of February 3rd was a sufficient point on which to hang the equity jurisdiction, even if there were nothing more, and, once attached, such jurisdiction would be retained to do complete justice. This is an elementary rule of equity, which has been applied in *Zobel v. Fannie Rawlings Co.,* 49 Colo. 134, 111 Pac. 843; *United Coal Co. v. Canon City Coal Co.,* 24 Colo. 116, 48 Pac. 1045; *Cree v. Lewis,* 49 Colo. 186, 112 Pac. 326. There is no distinction in equity between a cause of action *ex contractu* and *ex delicto.* The question always is: "Is ground for equitable relief alleged and proved?" *Nevin v. Lulu & White S. M. Co.,* 10 Colo. 357, 364, 15 Pac. 611, 614, and many other Colorado cases; *Gates v. Paul,* 117 Wis. 170, 94 N. W. 55. See also *Denver Tramway Co. v. Cloud,* 6 Colo. App. 445, 40 Pac. 779.

The case of *Connell v. El Paso G. M. & M. Co.,* 33 Colo. 30, 78 Pac. 677, does not support plaintiff in error. In that case there was no allegation or evidence of anything but a fraudulent misstatement of fact. Here there is a complete cause of action alleged and proved, even if we eliminate all allegations and evidence of conspiracy and fraud. That the court will grant relief on any facts al-

leged and proved, see *Kayser v. Maugham,* 8 Colo. 232, 251, 6 Pac. 803; *Powell v. Bank,* 19 Colo. App. 57, 62; 74 Pac. 536; *Jaksich v. Guisti,* 36 Nev. 104, 134 Pac. 452.

5.   Reversal is asked because the complaint did not offer to do equity.   A taxpayer could not offer the *status quo.   Miller v. Perris Irr. Dist.,* 92 Fed. 263, 267; *Sechrist v. Rialto Irr. Dist.,* 129 Cal. 640, 62 Pac. 261.   The court treated the matter as if equity had been offered and required equity on the part of the district, which was the real plaintiff, at least at the time the case was tried.

The point that the court did not require the district to do real equity is not well taken.   The district got nothing of any value.   The court gives back everything the district got.   True, it is worthless to those to whom it is returned, but it is worthless to the district without the completed system, and, whoever else may be in fault that the system is not completed, the district is not.

6.   It is claimed that the district dealt with Lucas as a principal, knowing of his relation to Doherty & Company, the argument being that if Doherty & Company are held it must be upon the theory that Lucas was their agent.   Of what consequence is it whether the district contracted with Doherty & Company or Lucas?   Doherty & Company got the bonds through Lucas, with full notice of their infirmities.   What we have said above shows that Doherty & Company, are bound to return them for that reason, whether the contract be regarded as theirs or Lucas'.

7.   The contract of 1912 provided for the delivery of certain rights of way of a value relatively nominal, and it is now claimed that this $250,000 in bonds ought not to be returned, first, because delivered upon a completed contract, and second, because adjudged properly delivered in a former case, number 774 Adams County district court.

As to the first reason, the court found that these bonds were delivered as an advance payment upon contemplation of the fulfillment of the whole contract and conveyance of a completed system.   We think that decision is right.   The

equity of this case, stripped of its verbiage, is clear:  L. agrees with D. to build a house on Lot 10; to acquire the right to a distant spring, with a right of way for a pipe; to lay a pipe from the spring, to the house, and to convey the whole to D., free of incumbrance for $5,000, to be paid on conveyance.  He gets the right of way and conveys it to D., and receives $1,000 of the $5,000. He never finishes or conveys the house, spring, pipe or lot. Ought he in equity to return the $1,000 on the reconveyance of the right of way?  The question answers itself. It is absurd and inequitable to suppose that the right of way alone was intended to be purchased by the district without any ditches, reservoirs or water, or without a complete workable system, nor does it appeal strongly to a chancellor to see a consideration of about $6,000 set up to support the retention of this $250,000.  So true is this that, if the trial court could not have found these bonds to be an advancement, it could hardly have escaped finding a conspiracy to defraud the district.

As to the second reason, we do not find that in the former case, No. 774, in the district court of Adams County, anything whatever was held with reference to this $250,000.  There was a finding that the bonds were delivered "on account and in fulfillment of the contract" of 1912, which is not inconsistent with the finding of the trial court in the present case.  No judgment in respect to these bonds was rendered in that suit.

The court below construed the contracts of 1910 and 1912 correctly, that is, that they provided for the delivery to the district of a completed system, not for the construction of a system nor for the delivery of a partial system. In *Antero Co. v. Lowe,* we gave the same construction to the same contracts.  The district court held as we did in *Antero v. Lowe,* that the contract of 1913 was void, and correctly held that therefore that instrument had no effect, not even to annul or vary the contracts of 1910, or 1912.

It follows from the construction of these contracts, that

the payment of $250,000 in bonds must have been as an advance, subject to the completion of the contract, and this relieves us from the necessity of determining whether the contract for these partial payments was valid at all, which we are inclined, with the court below, seriously to doubt.

8. Forty-seven thousand dollars in the bonds of the district were delivered prior to the assignment to Lucas and subsequently acquired by Doherty & Company, as the court finds, with full knowledge of everything affecting them, in pursuance, it is claimed, of a provision of the contract that payment in bonds might be made from time to time. These bonds, like the $250,000 in bonds above mentioned, were delivered for something that has no value whatever to the district unless the completed system is conveyed to it. These bonds, like the others, then, must be regarded as the court below did regard them, as conditionally delivered, and in equity they should be returned by those to whom they were delivered or those who have received them with notice.

9. The court ordered Doherty & Company to pay to the district the amount of a certain assessment of damages upon condemnation of some of the property intended to be a part of the system. The point is made that this order was error because the district is not liable for that amount, which is about $13,000, such award not being a judgment but an assessment which the district must pay only in case it decides to take the condemned property.

The defendant in error answers that by saying that, inasmuch as the ditch has been built and maintained for seven years on the ground, that the district cannot now elect to abandon, but must pay. We think that position is correct.

The court intimated that it would give judgment for the par value, which we think is correct, because, when the district has been paid for the bonds, it will owe their par value. It might be reasonable to say, as some of the cases do, that it would be unfair to render a judgment

against one in the position of Doherty & Company, for the par value, and then permit the district to take that money and go into the market and buy the bonds for less; but that is not what the court in this case has done; it has permitted Doherty & Company to go into the market themselves, get the bonds as cheaply as they can, and return them to the district. If they cannot get them for less than the par value, neither could the district.

There are other points which we do not think it necessary to mention here. The decree is fair and equitable and is affirmed.

MR. JUSTICE ALLEN and MR. JUSTICE BAILEY, dissent.

MR. JUSTICE WHITFORD, not participating.

MR. JUSTICE ALLEN dissenting:

I cannot concur in the conclusion reached by the majority, nor agree with the views expressed in the majority opinion.

Neither from the complaint, nor from the evidence, does it appear that plaintiff was entitled to maintain this suit which is based upon a cause of action, if any exists, belonging to The East Denver Municipal Irrigation District. The authorities uniformly hold, at least do the cases decided by this court on that point, and there is no dispute as to this proposition, that a taxpayer or stockholder cannot bring an action upon a cause of action belonging to the municipality or corporation, where the governing board or managing officers of the corporate body has, or have, not wrongfully refused to sue. The rule is too well settled to require discussion. However, attention may be called to the recent case of *Lowe v. Antero, etc. Co.*, 69 Colo. 409, 194 Pac. 945, where, among other things, this court said:

"A taxpayer as a rule in the absence of fraud has no capacity to bring an action for the district against the will, discretion and judgment of the board and the district

in whom are vested by statute the power and authority to exercise such judgment, neither can the court exercise the discretion vested by law in the board or the electors. Discretion exercised by the proper authorities, unless abused, cannot be reviewed by the court at the instance of a tax payer."

There is no question but that the right of action in the instant case belonged to the irrigation district. Whatever may be said as to notice to, or demand of, the district to bring this action, the record shows that the district did not wrongfully refuse to bring suit, and did not abuse its discretion in not instituting litigation. This situation alone is sufficient to show that plaintiff had no capacity to sue.

The majority opinion attempts to meet the situation above pointed out, by relying upon the novel proposition that defendant Doherty & Company `cannot object to plaintiff's incapacity to sue because "the district itself urged * * * and urges here the same relief which is asked by Steele" the plaintiff. I do not find that the district urged any relief. It filed an answer, admitting certain allegations of the complaint, and prayed that "it may go hence with its costs." Of course, the fact remains that the district itself did not object to plaintiff's bringing the action, and is not complaining of having been deprived of the exercise of its discretion. This fact appears to be seized upon by the majority opinion, but such fact in no way affects the right of the defendant Doherty & Company to object to plaintiff's capacity to sue.

Plaintiff's right to maintain the action depends on the facts as they existed at the time the action was commenced. If his right then existed, the district could not deprive him of the right to proceed with the action. If his right did not exist, the district could not invest him with such right. In the instant case it is wholly immaterial what attitude the district took after the action was commenced. The plaintiff had control of the suit.

"It is a principle of equity practice, when a person

brings a suit in behalf of himself and such others as may wish to come in who are similarly situated, that the complaining stockholder controls the case and may continue, compromise, abandon or discontinue it at his pleasure until a creditor similarly situated has procured an order to be made a party to the action, or until interlocutory judgment is entered." 3 Cook on Corporations, sec. 748, p. 2738.

The law which prevents a taxpayer or stockholder from suing upon a cause of action belonging to the municipality or corporation is not so much for the benefit of the latter as for the benefit of third persons, against whom the cause of action may exist. Such persons may settle the controversy with the corporation or district without suit. There may often be a reasonable compromise. This reason is apparently recognized in *Wallace v. Lincoln Savings Bank,* 89 Tenn. 630, 15 S. W. 448, 24 Am. St. Rep. 625, where the court said:

"A very wide discretion is necessarily reposed in the directors of a corporation. It is not the duty of the managers of such association to bring suit upon every supposed wrong or injury to the corporation. If it were so, strangers could never know when a settlement, compromise or adjustment was a finality, if the matter was subject to be overhauled at the suit of any discontented shareholder."

The district could not authorize the plaintiff to sue, nor invest him with the capacity to sue by failing to object to his right to maintain the action. Whatever the district may have done, the defendant Doherty & Company is entitled to insist upon and have applied the well settled rule that a taxpayer cannot sue to enforce a cause of action existing in favor of the corporation or district, except when necessary to prevent a failure of justice.

The majority opinion appears to hold that if a suit in equity is brought by a taxpayer, on a cause of action belonging to the corporation or district, the complaint need not offer to do equity because, as the opinion states, "a

taxpayer could not offer the *status quo.*" The maxim, "He who seeks equity must do equity," certainly operates in favor of only the party against whom relief is sought, and is applied to promote the ends of justice. A defendant cannot be deprived of the benefits of the maxim or rule simply because the plaintiff or complainant is a taxpayer. If the taxpayer himself, in his individual capacity, cannot do equity, he can ask, and the decree may provide, that the corporation or district may do equity. In *Mosher v. Sinnott,* 20 Colo. App. 455, 79 Pac. 742, a decree was held erroneous because it did not require the corporation to do equity. That was an action brought by a stockholder. The court also held that the complaint failed to state facts sufficient to constitute a cause of action in that it failed to offer to do equity with reference to certain defendants. The complaint in the instant case made no offer to do equity, or make provision whereby equity may be done with reference to the defendant Doherty & Company, and for this reason was demurrable. 21 C. J. 400. The majority opinion assumes that equity was done by the decree. The decree provides that the clerk of the court, as commissioner, "should execute and deliver to Doherty & Company, * * * a deed conveying all right, title and interest the district has to and in the irrigation system and every part thereof."

The decree, in respect to the matter above mentioned, is erroneous for two reasons: First, because the court had no power to convey, or to order a conveyance of, the "irrigation system and every part thereof." The property was acquired by the irrigation district under a statute which provides, in section 3452 R. S. 1908, as follows:

"The title to all property acquired under the provisions of this act shall immediately and by operation of law vest in such irrigation district, in its corporate name, and shall be held by such district in trust for, and is hereby dedicated and set apart for the uses and purposes set forth in this act. * * * "

The property was, therefore, inalienable. If the dis-

trict could not convey, a court could not direct a conveyance. The second reason why the decree is erroneous, in this connection, is that equity is not done to the defendant Doherty & Company by transferring to it the irrigation system. A conveyance of the bare bones of systems, whose only value depended upon the appurtenant lands, would not in any just sense be a restoration of the *status quo.* What would be conveyed, would have little, if any, value to the defendant.

If there is no other way of doing equity than by such conveyance as is provided for in the decree, then it is impossible to do equity, in which event the action cannot be maintained. Plaintiff should have been left to pursue his remedy in an action for damages. *Auld v. Travis,* 5 Colo. App. 535, 544, 39 Pac. 357.

The majority opinion takes up the discussion of another point in the case by stating that "it is objected that the action was *ex delicto* and the judgment *ex contractu.*" I think the contention of the plaintiff in error, in this connection, is not as stated in the words above quoted, but is in the language of one of the headings in a brief, namely, that "the whole structure of the complaint was founded on active, fraudulent conspiracy, and proof thereof failing, (it) should have been dismissed."

The allegations of conspiracy saturated the complaint. The court found that there is not sufficient evidence to sustain plaintiff's charge of conspiracy. The complaint is too lengthy, even so far as conspiracy is concerned, to be here reviewed, and the allegations cannot be summarized in a brief space. In view of the allegations in this case, I am unable to agree with the majority opinion that the rule controlling here is simply, "Is ground for equitable relief alleged and proved?" The rule to be applied is that stated in 21 C. J. 674, as follows:

"If by its allegations the bill is framed for relief upon a certain and definite theory, relief must be granted on that theory or not at all."

In a note, citing a large number of cases, it is said, in 21 C. J. 675:

"Where the bill is framed on the theory that there was fraud entitling plaintiff to relief, it must be proved as laid in order to warrant a decree in plaintiff's favor; relief will not be granted on proof of other facts, although included in the charge of fraud and sufficient under some circumstances to constitute a claim for relief under another head of equity."

The trial court, upon its finding, above mentioned, should have dismissed the complaint.

Another reason why the judgment should be reversed is that the complaint states no cause of action against Doherty & Company. The Gas Securities Company is made a defendant. The complaint alleges that The Gas Securities Company is now the owner and holder of the bonds, and that it acquired the bonds with full notice of all matters affecting the validity of the bonds, and prays that this company be compelled to bring in the bonds for cancellation. It thus appears from the complaint that the bonds are not valid, outstanding obligations of the irrigation district. This being true, it was impossible for the complaint to state a cause of action for a money judgment against the defendant Doherty & Company for the face, or any, value of the bonds in the hands of such a purchaser, and the decree to this end, based upon such a complaint, is erroneous. The conclusion above stated is further aided by the fact that the plaintiff took default against the Gas Securities Company. Nothing stood in the way of full relief against the Securities Company, and the court, in its original findings, held that the Securities Company should be compelled to return the bonds. This finding was changed in the final decree, the court then holding that the plaintiff is not entitled to any relief against The Gas Securities Company, and thereby the court, rather than the plaintiff, made the action really one against Doherty & Company. But the complaint still failed to state a cause of action against this defendant, because the allegations

with reference to the Securities Company negatived a cause of action against Doherty & Company.

If the plaintiff or the district was entitled to some judgment against Doherty & Company, it would not be a judgment for the return of the $250,000 in bonds delivered under the contract of 1912. The decree, providing for the return of such bonds, should not be affirmed. In this connection, it may be assumed, as the trial court found, that the original contract, called the contract of 1910, was for an entire irrigating system for the entire price. If bonds were delivered under the contract of 1910, they may have been mere advances and subject to recovery if the entire system were not completed. However, under the contract of 1912, the bonds were not delivered as advances, but were delivered upon a completed contract, namely the contract of 1912. It may be true, as stated in the majority opinon, that the consideration for the $250,000 bonds was worth only $6,000, but the district got all it contracted for in the 1912 contract. When it received what it contracted for, it delivered the consideration moving from it, the $250,000 in bonds. It delivered them in pursuance of a complete and completed contract, and not as a partial payment on an uncompleted contract. The contract of 1912 was entered into not only by resolution of the board of the district, but upon vote of the electors, and constituted a solemn obligation of the district. The court erred in ordering any judgment, based on the delivery of the $250,000 in bonds above mentioned.

The decree orders defendant Doherty & Company to bring in and deposit with the clerk of the court, $47,000 of the district bonds which, under the court's findings, the defendant obtained from the Promotion Company. These bonds were delivered to the Promotion Company under the original contract, and prior to the assignment of contracts to Lucas or Doherty & Company, and were given in pursuance of a provision of the original contract that payment in bonds might be made from time to time. These bonds were delivered under circumstances similar

to those attending the delivery of $40,000 in bonds to Russell, Clark, and the Interstate Trust Company, which bonds, and the delivery thereof, were held valid by this court in *Interstate Trust Co. v. Steele,* 65 Colo. 99, 173 Pac. 875. That decision settles the validity of the delivery, and of the bonds, in this case, so far as concerns the $47,000 in bonds, above mentioned. The decree is based on the theory that if the Promotion Company still had these bonds, it would be compelled to return them to the district because the irrigation system was not completed, and that Doherty & Company received them from the Promotion Company with notice. Under the decision in the first Steele case, above cited, the Promotion Company would not have to return them, and hence the reason for the decree does not exist. At any rate, the bonds were valid in the hands of the Promotion Company, and could be transferred by it to any purchaser and the latter's right to said bonds could not be affected by any subsequent failure to complete the contract. Doherty & Company, as to these bonds, is in the position of such purchaser. It was error to include these bonds in the judgment.

The decree orders Doherty & Company to deliver up $673,500 in bonds, within ninety days, and, in effect, the decree further provides that on failure to deliver the bonds, there shall be a money judgment against the company "for the par value of the bonds and coupons." Judgment for the par value of the bonds is unwarranted either by the allegations of the complaint or by the evidence. The par value of bonds or notes which have not been paid is, as a general rule, recoverable when they have been procured by false and fraudulent representations and have been fraudulently put into circulation. That is, where the manner of their being procured and disposed of necessarily excluded the possibility of any equities on the part of the alleged wrong-doer. The trial court erred in applying the foregoing test, which applies only to illegal and fraudulent transactions. It does not apply in this case. The court found there was no fraud. If any money judg-

ment is recoverable, it is for the damage which is suffered by the district by the failure to return the bonds. The measure of damages is not the par value of the bonds but their present market value. In other words, it is what it would cost the district to procure the bonds. This is the rule adopted by the Supreme Court of the United States in *City of Memphis v. Brown*, 20 Wallace, 289, 22 L. Ed. 264, the court there said:

"If Brown & Co. have received bonds of the city, which they are bound to return, and do not return, what damage does the city suffer? The face of the bonds and interest, it is said, as if they run to maturity, the city will then be liable for the payment of the whole amount. Not so. * * * The value of its bonds in the market is fifty cents on the dollar. With that amount of money it can now place in its treasury the bonds Brown & Co. fail to return. It is difficult to see that the damage sustained can be beyond that amount."

It is no answer to this that, as stated in the majority opinion, Doherty & Company can go into the market themselves and get the bonds. That consideration can have no legitimate influence, any more than the contention made in the case above cited, relating to the ability of the city to go into the market to buy the bonds. This court should not ignore a rule of law simply because a way may be found by the defendant to avoid its application. The City of Memphis case should be treated as authoritative in this court. In *Hayden v. Town of Aurora*, 57 Colo. 389, 142 Pac. 183, we said:

"It is the policy of this court, declared again and again, in the absence, as in this case, of constitutional or statutory inhibition, or contrary holdings of its own, to follow decisions of the Federal Supreme Court, and it therefore becomes not only a duty, but our pleasure to now do so."

The majority opinion concludes with the statement:

"The decree is fair and equitable and is affirmed." As to the proposition that the decree is "fair and equitable" the conclusion of the majority opinion seems to be based

on the reasoning that the work done by the contractor "is worthless to the district," because not a "completed system," and therefore the district should recover back everything it paid or advanced under any of the contracts.

An irrigation system may be useless until completed, but it is not, on that account, worthless. Whatever has been done short of completion, means that that much has already been done, and need not be performed again, whenever steps are or may be taken to build a complete system. According to the decree, Doherty & Company received, on account of what was done, $683,000.00 in bonds. Doherty & Company did not obtain these bonds by fraud. They received them for moneys advanced, property rights procured, material and labor, and pursuant to contracts, including the valid contracts of 1910 and 1912. The defendant is compelled to return all of these bonds, and is allowed to retain nothing. It receives no compensation for work done, or property procured, and no reimbursement for moneys advanced. It receives only a worthless title to the incompleted irrigation system, and the majority opinion concedes that "it is worthless to those (Doherty & Company) to whom it (the system) is returned." The defendant is therefore required to sustain a loss, and a very heavy one, represented by what it gave as the consideration for the $683,000.00 in bonds, and it is to be presumed that the consideration was fair and adequate, the record showing nothing to the contrary.

The defendant, Doherty & Company, is certainly entitled to the reasonable value of whatever it gave for the bonds, if the judgment for their return is to be upheld. It is an elementary rule that where labor is performed or materials furnished by one person for another under a contract which for reasons not prejudicial to the former is or becomes unenforceable, he may recover therefor upon a *quantum meruit*. 40 Cyc. 2825. Equitable considerations which support this rule existed in the instant case, but equity to defendant was neither offered by plaintiff

nor done by the decree.  The decree is unfair and inequitable and ought to be reversed.

I am authorized to state that Mr. Justice Bailey concurs in this dissent and agrees with the views herein expressed.