No. 13,416.

DISTRICT LANDOWNERS TRUST ET AL. *v.* DOHERTY.

(30 P. [2d] 319)

Decided February 26, 1934.

Messrs. MELVILLE, MELVILLE & TEMPLE, for plaintiffs in error.

Messrs. LEE, SHAW & McCREERY, Mr. CHARLES D. BROMLEY, for defendant in error.

*En Banc.*

MR. JUSTICE HILLIARD delivered the opinion of the court.

ACTION at law. Defendants, plaintiffs in error, having elected to stand on their overruled general demurrer to the complaint, plaintiff, defendant in error, was given judgment in the sum of $342,561.29, and costs. Error is assigned.

Whether the court erred depends on the construction of two instruments, one, set forth in the complaint, entitled a ''Certificate of Indebtedness issued by the District Landowners Trust,'' in the complaint called a ''promissory note,'' and the other, a ''Declaration of Trust,'' by the terms of the certificate made a part thereof, pleaded as an exhibit. Unless in the light of the complaint the language of these writings precludes present recovery, the judgment was justified. The certificate, designated as ''No. 1'' (it appears there is another), reads as follows:

''This is to certify that the District-Landowners Trust of Denver, Colorado, is indebted to Henry L. Doherty, of New York City, New York, in the principal sum of Two Hundred Twenty-five Thousand Dollars, payable at the office of said Trust at Denver, Colorado, on or before January 1, 1929, with interest at five per cent per annum, interest payable semi-annually on the first days of July and January in each year.

"This Certificate is issued by order of the Board of Trustees in accordance with the authority granted to said Board by a Declaration of Trust executed by I. B. Melville, A. C. Monson, H. G. Day, Ed Shaw and Harry W. Humphreys, all of Denver, Colorado, as of date of April 12, 1924, and recorded in the office of the Recorder of the City and County of Denver, and the Counties of Adams and Arapahoe, in the State of Colorado, which by reference is made a part of this Certificate; and said indebtedness is payable out of the Trust property and the Trust Funds only and is not a personal obligation or liability of the Trustees as individuals.

"That by resolution of said Board of Trustees unanimously adopted (and duly entered upon its records), this Certificate jointly with Certificate of Indebtedness No. 2 issued to the Antero and Lost Park Reservoir Company (a Colorado Corporation), for one hundred seventy-five thousand dollars, with interest at five per cent per annum, principal and interest payable at the same time as herein, is also a first lien upon the High Line Extension Canal and Laterals, with the tenements and appurtenances thereunto belonging, at this time conveyed to said Trustees, and is to constitute also a first lien upon all other canals, laterals, reservoirs, reservoir sites and rights of way, purchased, constructed or otherwise obtained by said District-Landowners Trust, and upon all improvements on all thereof, to secure the principal and interest of said two Certificates of Indebtedness until the same are fully paid; and properties free and clear of taxes and assessments and of equal and of prior liens.

"And it is expressly agreed by said Board of Trustees that no tax sale certificates or lands held by tax deed or otherwise, which are assigned, transferred or conveyed to said Trustees, shall be by said Board assigned, transferred or conveyed to others except and until and unless at least the adjusted amount of the taxes actually due on the lands to which the same attach shall have been paid into the Trust in money or the owners of said lands shall

have given their respective promissory note or notes to said Trust in the amount of said adjusted taxes, secured by the same first trust deed on said lands that secures the notes for their respective pro rata share of the expense of building said reservoirs and completing said system; and further agreed that none of the bonds or coupons obtained by said Trust shall be cancelled or returned to the District until the adjusted taxes for their payment shall have been taken care of as above provided; and further agreed that all moneys remaining in the Trust, after constructing said system of irrigation works and after obtaining all outstanding bonds, and coupons and warrants and after paying all outstanding judgments and legal claims, other than attorneys' fees, against the District and paying the current expenses incident to said Trust, shall be used First for the payment of said Two Certificates of Indebtedness, in the pro rata of the respective amounts, and that no final distribution of the Trust Fund nor any transfer of said system of irrigation works shall be made until the two said Certificates of Indebtedness shall have been paid in full or shall have been otherwise secured to the satisfaction of the owners thereof, expressed in writing and duly entered upon the records of the Trust.''

█ █   By the terms of the certificate of indebtedness the declaration of trust was made part thereof. Both instruments were pleaded, as the practice seems to require. *Abercrombie v. Bear Canon Co.,* 86 Colo. 169, 279 Pac. 42; *Titlow v. Hubbard,* 63.Ind. 6. In the situation appearing, the certificate is to be construed in the light of the provisions of the declaration. *Abercrombie v. Bear Canon Co., supra; Munro v. King,* 3 Colo. 238. Considering the language of the two documents, defendants urge that plaintiff's right of recovery is conditional. Arguing so, and emphasizing that performance or waiver of the conditions is not pleaded, they maintain the complaint does not state a cause of action. If defendants' premise is sound, the court erred in overruling their general de-

murrer. *Abercrombie v. Bear Canon Co., supra; Jennings v. First Nat. Bank*, 13 Colo. 417, 22 Pac. 777. Thus stated, although difficulty of answer persists, our study is simplified. We have set forth the material paragraphs of the certificate of indebtedness, and as we proceed will analyze and quote from the declaration of trust.

It appears that long prior to the execution of the declaration of trust, there was an existing irrigation district, comprising great acreage of lands, numerously owned in severalty; that in the interest of providing supply and works for watering the lands, the district had voted a three million dollar bond issue, and at the inception of the litigation mentioned in the declaration, some seven hundred thousand dollars of the bonds, and more, had been paid out as an advancement on a system of works; that in a suit instituted by a landowner, the validity of the contract of purchase and construction of the proposed system, and the issuance of the bonds toward the payment therefor, as indicated, were challenged and protracted litigation ensued, in which the landowner prevailed (See *Doherty & Co. v. Steele*, 71 Colo. 33, 204 Pac. 77); that due to the inadequacy of the system and supply of water, and general failure to construct as contracted, claimed in the suit, the landowners largely had defaulted in tax payments for the bonds, and for state, county and school purposes, as the result of which there were outstanding tax sale certificates or tax deeds against nearly the entire irrigable acreage in the district, some had suffered judgments to be entered against them, and the condition of the irrigation district and the landowners was chaotic and uncertain of issue; that in appreciation of the situation, seemingly shared by all in interest, a plan was conceived, and formulated in the declaration, to the general effect that through trustees named therein the district would assist in making sale of a certain reservoir and canal system, to the City and County of Denver, and in inducing the owners of an additional portion

of said system, to make conveyance thereof to the trustees for the use of the taxpaying landowners of the district for a term of years, they in the meantime to obtain from the City and County of Denver water necessary to irrigate said lands, and to have the outstanding bonds of the district, heretofore mentioned, as well as all existing judgments, tax sale certificates and tax deeds, assigned to the trustees and held in trust, all pending adjustment and payment in accordance with the provisions of the trust; that in the interest of the realization of the original purpose and plan of the district and the landowners therein, namely, to procure water supply and provide works in accomplishment of distribution, in addition to securing possession of the outstanding bonds of the district, judgments and tax obligations, as narrated, the trustees were to obtain certain existing canal and distributing laterals, to construct or otherwise obtain storage reservoirs, and hold all in trust; that the several landowners were to pay the trust not to exceed twenty dollars per acre in cash, or by first trust deeds on their several land holdings, securing payment of equivalent sums, to, and running to, the trustees for the use of the trust, as well as all other property, real, personal and mixed, received by the trustees, to be known as the "Trust Property," except that money received was to be known as the "Trust Fund"; that the trustees were authorized, and charged as well, to proceed in behalf of the trust and work to the end originally purposed by the irrigation district. The trustees were given broad powers generally, and in the matter of acquiring water and water rights for the benefit of the trust, they were authorized to "issue trustee's certificates of indebtedness therefor, payable on or before the termination of this trust and, if found necessary so to do, may secure the same by lien on said system of irrigation." Apparently the certificate of indebtedness sued on here was issued pursuant to this provision of the declaration. It was further

provided by the declaration, that "in all written contracts and documents, reference shall be made to this written declaration of trust; and all persons extending credit to, contracting or dealing with, or having claims of any description against, the trustees or the trust or the district-landowners trust, shall look only to the trust fund and the trust property for payment and satisfaction." The certificate of indebtedness which was the basis of the judgment of which complaint is made, as we have seen, made such references. By the terms of the declaration the trust was to continue for five years, "unless prior to such time the said system of irrigation works as contemplated herein shall be fully completed and paid for." The declaration is dated April 12, 1924, but it is not claimed that the purposes of the trust were accomplished before the expiration of the term mentioned or since. Whatever may have occasioned the delay, and no criticism is alleged, the trust has not been fully executed and the trustees are continuing to function. "An unexecuted trust will not terminate because of a delay on the part of the trustee in executing it, notwithstanding the trust instrument directs its execution within a certain time." 65 C. J. p. 352, §125. Considering the requirements in relation to things to be done by the trustees, as set forth in the declaration and certificate, and the lack of definite statement with reference to when the trust must be executed, and the uncompleted state thereof, it harmonizes with reason to say it should at least continue until so administered that the certificate of indebtedness sued on, and the like one referred to therein, are discharged in accordance with their terms.

　■　The instrument which is the basis of plaintiff's cause contains conditions. The conditions must be regarded as part of the instrument. *Jennings v. First Nat. Bank, supra; Worden v. Dodge,* 4 Denio 159, 47 Am. Dec. 247. If it were limited to its first paragraph, still the terms are unusual and of doubtful intendment. The lan-

guage imports the existence of a trust, necessarily presaging trustees, whose powers were of concern to the obligee. Any sufficient inquiry would have disclosed the declaration and its terms. Identity of the trustees, the extent of their powers, the genesis of the trust, all would have stood in revelation. The thought that there was neglect of investigation may not be indulged. Indeed, the further provisions of the document make the negative clear, and plaintiff could not have been unadvised. The analysis already made shows that a group of individual landowners had essayed to establish a great irrigation system, to finance which they voted a large bond issue. When they had expended a vast sum, they found that water was not available, that their investment was wasted, and their dreams impossible of fulfillment. Through exasperating litigation, necessarily prolonged and expensive, they were measurably restored to their original status. They were still without water or works, but they were in position to start again. In their re-embarkation they took such precautions as they were advised would insure completion of the system and require the accomplishment of definite results before they should be called upon to pay for a certain unit, to be purchased from plaintiff. The trustees understood the requirements and it is not to be supposed that plaintiff was not well advised. In their dealings with plaintiff, therefore, the trustees did not execute the ordinary promissory note, payable at a definite time, but did execute, and the plaintiff accepted, the pleaded document. By its provisions it is tied to another instrument, the declaration of trust, also pleaded. In the declaration, the reference being to the particular irrigation property constituting the consideration for the certificate of indebtedness sued on, it is said: "The trustees * * * shall have full power, upon such terms as they deem proper, to borrow money on the credit of the 'trust property' and the 'trust fund' necessary for the above purposes and for obtaining said

High Line Extension Canal and Laterals, reservoir sites and rights of way for additional laterals, and for purchasing, constructing or otherwise acquiring such reservoirs and additional laterals, and for purchasing or leasing or otherwise acquiring water and water rights for the proper irrigation of said lands, and the necessary expenses in connection therewith, and may issue trustees' certificates of indebtedness therefor, payable on or before the termination of this trust, * * *.'' It will be observed that the authority is not to the effect that the certificates shall be payable on or before five years, or on or before January 1, 1929, but ''on or before the termination of this trust,'' and definitely fixed, as already determined. When, then, are the certificates due and payable? The answer appears in the certificates set forth by plaintiff. In the fourth paragraph the trustees ''further agreed that all moneys remaining in the trust, after constructing said system of irrigation works, and after obtaining all outstanding bonds, and coupons and warrants and after paying all outstanding judgments and legal claims, other than attorneys' fees, against the district and paying the current expenses incident to said trust, shall be used first for the payment of said two certificates of indebtedness, in the pro rata of the respective amounts, and that no final distribution of the trust fund nor any transfer of said system of irrigation works shall be made until the two said certificates of indebtedness shall have been paid in full or shall have been otherwise secured to the satisfaction of the owners thereof, expressed in writing and duly entered upon the records of the trust.''

██ Plaintiff contends that this is not a limitation, but rather is in his interest in the sense that had all the conditions set forth been met before January 1, 1929, when he insists the obligation was due in any event, he would have been entitled then to payment from the fund thus to come into existence. Assuming the soundness of

394

such view, it seems clear that his present complaint is not sufficient. On plaintiff's theory, had the conditions been met and the fund existed prior to January 1, 1929, he could have required payment at any such time. If so, and we are disposed to agree, it would have been necessary to allege fulfillment and the presence of the fund. If performance of conditions and existence of the fund, and not the date mentioned in the certificate of indebtedness, controlled before January 1, 1929, so in reason it must control after the date. The complaint was not drawn on the theory we find to obtain in the documents which settles the rights of the parties. It follows that the court erred in overruling defendants' general demurrer.

In the view we have taken of the case generally, it seems unnecessary to consider the claim of defect of parties. Let the order be that the judgment is reversed, the general demurrer to be sustained.

MR. JUSTICE HOLLAND not participating.