No. 14,950.

CUDDIGAN AS PRESIDENT OF SILVERTON MINERS' UNION
ET AL. *v.* SAN JUAN FEDERATION OF MINE, MILL AND
SMELTER WORKERS ET AL.
(130 P. [2d] 923)

Decided November 2, 1942.

Messrs. MOYNIHAN-HUGHES, for plaintiffs in error.

Messrs. ADAMS, HECKMAN & RASO, for defendants in error.

*En Banc.*

PER CURIAM.

THE Silverton Miners' Union, Local No. 26, on behalf of which and its members this action was brought, is a local labor union located at Silverton, Colorado, and was organized under a charter granted to it in 1894. Since that time it has been a local union of two or three parent or national organizations, and at this time is subordinate to a national organization known as the International Union of Mine, Mill and Smelter Workers. During the years, it has acquired real and personal property, consisting of a hospital, with accommodations for twenty beds, and a union hall which is centrally located, and on the first floor of which all business of the union was transacted and all records kept in a safe. Meetings of the organization were held on the second floor. On the lower floor living quarters were provided for the secretary-treasurer of the union, who had a full-time job taking care of its business details. July 16, 1939, a strike was declared by this local by a vote of 223 out of a total membership of approximately 240. There is no contention that this strike was not legally called and lawfully conducted. August 28, 1939, a regular meeting of the union was held at its hall, which commenced about the hour of 8 o'clock p.m., at which several matters of business were transacted. At that time a crowd of about twenty-five or thirty people congregated opposite the hall, to which the attention of the law-enforcement officers was directed. They urged the crowd to move on, but with little success. Nothing irregular occurred at this meeting, which adjourned at about 10 o'clock p.m. The presiding officer was the president, Horace J. Sease, who, during the proceedings, asked for his release, based upon a letter which he stated he had received from his brother-in-law in California, offering him employment. His release was granted, followed by a vote of thanks for past services, and P. G. Cuddigan,

the vice-president, was declared to be his successor. After the regular meeting adjourned, a crowd of approximately 150 to 200 people formed near the union hall and demanded the immediate deportation of the officers of the union, and its national representatives, and their lives were threatened unless there was a compliance with the demand. Some of the officers were severely beaten, rocks were thrown through the windows of the hall, and after such deportation was accomplished a crowd took possession of the union building. Some members of the crowd were members of the union. The two leaders, Bertram and Scheer, were members of the union who had not attended a meeting for several months, and disciplinary action was pending against them. We refrain from making a detailed statement of the actions of the mob, because we are loath to perpetuate a record of these performances in our printed reports, and we believe that the participants also may be desirous of erasing them from their minds. Every constitutional guarantee of liberty of plaintiffs in error was grossly violated. Legitimate persuasion ceased and force and violence reigned. The only protection they received from the law-enforcement officers was a promise of safety in leaving the county. No protection was offered if they remained. That outside influences were dominant in this revel of violence and lawlessness clearly is indicated by the record. Disappointment because of economic injury growing out of a legitimate strike is no justification for the force and violence perpetrated against plaintiffs in error. Almost half a century ago a great jurist, Oliver Wendell Holmes, referring to such an economic controversy, gave it judicial recognition in these words: "One of the eternal conflicts out of which life is made up is that between the effort of every man to get the most he can for his services, and that of society, disguised under the name of capital, to get his services for the least possible return. Combination on the one side is patent and powerful. Combination on

the other is the necessary and desirable counterpart, if the battle is to be carried on in a fair and equal way." *Vegelahn v. Gunter*, 167 Mass. 92, 108, 44 N.E. 1077. Notwithstanding the perpetration of this violence and lawlessness against plaintiffs in error, they showed a forbearance that was, under the circumstances, remarkable. They committed no overt act, but, in the interest of public peace and the preservation of human life, they submitted to the lawless demands of the mob. The evidence shows that during the entire time of the strike, as well as on the night of August 28, plaintiffs in error committed no lawless acts or disturbance of any kind, and that their conduct and behavior were lawful in every respect.

There is here no dispute that the civil rights of plaintiffs in error were grossly violated, the trial court so found, and counsel for defendants in error, on this phase, state in their brief: "Unfortunately, the successful accomplishment of this revolution was accompanied by a certain amount of disorder and mob violence, culminating in assaults and batteries upon several persons and in their removal to Ouray county by the sheriff of San Juan county or under his direction." Their purpose here continues to be that, with the aid of judicial process, it shall remain successful.

After mob violence succeeded and the principal officers of Union No. 26 had been deported, a meeting designated in the record as "rump" was held. The former president of the union (Sease), who, at the regular meeting which adjourned at 10 p.m., obtained his release, reappeared at the hour of 12:01 a.m. and presided over a portion of this "rump" meeting. That this procedure, including the violence mentioned, had for some time prior thereto been planned, clearly appears from the evidence. The purport of this meeting was that it was a special meeting of the members of Union No. 26. No notice thereof was given to the members, nor was there any advance statement made of its object, and it .

was totally invalid in other respects. Counsel for defendants in error hardly justify its legality, and we therefore deem it needless to discuss the invalidity of its various acts in detail. Following this "rump" meeting, other members of Union No. 26 were requested to, and did, leave the county.

This action was brought by plaintiffs in error for the purpose of enjoining defendants in error from further violation of their civil rights, including a mandatory direction to "require such acts to be done as will give the plaintiff the full protection which he may be entitled to." Section 159, chapter 8, Code of Civil Procedure, Colorado. The complaint fully sets forth the facts upon which plaintiffs in error rely for relief, including the restoration of possession of the property, real and personal, from which they were ousted and of which they were deprived by force and violence.

October 7, 1939, after a full and complete hearing lasting several days, the trial court issued a temporary injunction, restraining defendants in error:

"1. From molesting or interfering with the plaintiff association or its individual members (except that this order shall not apply to such as have heretofore filed herein request to withdraw as plaintiffs herein), or in any unlawful manner interfering with the return of said members of said plaintiff association to the town of Silverton, or to the county of San Juan, state of Colorado; or through force, coercion or intimidation cause or compel the departure of any of the individual members of said association from San Juan county, or town of Silverton, Colorado.

"2. From molesting, disturbing or interfering with any meeting of the members of said plaintiff association hereafter held, and from congregating about the meeting place where any such meeting may be held; or from interfering with, molesting or disturbing said plaintiff association and its members in the lawful conduct of its business."

December 20, 1939, the court entered an order denying the application for a temporary injunction to restrain defendants in error from having access to or possession of the real and personal property described in the complaint. After the hearing (October 7, 1939) counsel for defendants in error filed a motion to make the complaint more definite and certain, separately stating and numbering the several causes of action commingled therein, it being asserted that several causes of action were alleged in the complaint. March 7, 1940, the court sustained this motion. Plaintiffs in error electing to stand on their complaint, the court, March 20, 1940, entered an order and judgment dismissing the complaint and for costs. Plaintiffs are here seeking a reversal of this judgment.

The primary question to be determined is whether the complaint states one or more causes of action. No contention is made that it does not state a cause of action for equitable relief, and that question is not before us. The objective sought by defendants in error in their motion to separate was the retention by them of all the real and personal property then in their possession. Their theory is, that possession and title to the property is a legal issue which a jury should determine, and that it cannot properly be decided in an equitable action for injunctive relief. If that were the issue before us there would be no controversy as to that theory; but the facts, as above stated, and the allegations of the complaint, are otherwise. Here we have the lawless taking of real and personal property by force and violence, and perhaps by fraud, which prior thereto had been used by plaintiffs in error in the conduct of a legitimate business. The property was taken from them in total disregard of every civil right under the state and federal Constitutions. Whether or not this property, admittedly taken under such circumstances, should be restored, was an important issue to be determined in the consideration of what would be adequate relief. Anything less

than such relief would give defendants in error the fruits of their lawless acts and take from plaintiffs in error property, possession of which was necessary in the proper conduct of the business of the union, and of which they could not lawfully be deprived without due process of law. We are not concerned in this litigation with the title to this property; that matter may have to be determined in some other proceeding. All we now are interested in, is whether property obtained in the manner and under the circumstances disclosed by the record before us may, in the administration of equitable relief, be restored to plaintiffs in error, in order that the remedy may be sufficiently adequate to give the protection to which they are entitled. In our opinion, Code section 159, supra, authorizes such relief. Counsel for plaintiffs in error, in their argument directed to the point that the complaint states only one cause of action, make reference to section 65 C(f), R.C.P., Colo., effective April 6, 1941, which was substituted for said section 159, and which is treated by counsel as not applicable to this proceeding. The language of that section affords a complete answer to the problem involved, and in our opinion may be considered as a correct statement of the general law.

In the case of *Arnold v. Hilts,* 52 Colo. 391, 121 Pac. 753, we had before us a somewhat similar problem, except that there, the possession involved was of a public office, and books, papers and records used in connection therewith. Possession had been obtained by defendant by force and violence, and it was contended that the suit to enjoin was an attempt to try title to public office. We rejected this contention and required the trial court to compel defendant to restore to plaintiff his office as well as all of the books and records relating thereto. See, also, 28 Am. Jur., p. 210, §17. Moreover, equity having taken jurisdiction for one purpose (about which there is here no dispute), will grant all legal relief incidental thereto. *Schilling v. Rominger,* 4 Colo.

100; *Danielson v. Gude,* 11 Colo. 87, 17 Pac. 283; *United Coal Co. v. Canon City Coal Co.,* 24 Colo. 116, 48 Pac. 1045; *Cree v. Lewis,* 49 Colo. 186, 112 Pac. 326; *Selfridge v. Leonard-Heffner Co.,* 51 Colo. 314, 117 Pac. 158; *Doherty & Co. v. Steele,* 71 Colo. 33, 204 Pac. 77; *Cobbey v. Peterson,* 89 Colo. 350, 3 P. (2d) 298; *Kitrell v. Gates,* 95 Colo. 123, 33 P. (2d) 390.

▉ Under either section 159, supra, or the principle of legal relief in equitable proceedings as above referred to, plaintiffs in error are entitled to the restoration of their property. Justice, under the facts, also requires that no technical point of pleading should be resorted to in order to prevent the relief to which plaintiffs in error are entitled. Counsel for defendants in error, to sustain their contention for dismissal of the complaint, place their reliance upon the case of *Labor Union v. Labor Union,* 85 Colo. 585, 277 Pac. 781. From what we already have said, we conclude that the facts and the complaint in the instant case have no relation to the facts and pleadings in the Labor Union case, where we said (p. 587): "There was no occasion for resorting to equity on the admitted facts of the complaint." From a careful study of the record, we conclude that since title to the real and personal property was not placed in issue by the complaint, only one cause of action is stated, and that therefore the trial court committed error in entering judgment dismissing the complaint.

Justice delayed may mean justice denied. Plaintiffs in error have been deprived of possession of the property here involved for approximately three years. We regret that such a long delay has occurred. We deem it necessary, therefore, to direct the district court to forthwith enter an order reinstating the temporary injunction granted October 7, 1939, and requiring defendants in error to restore to plaintiff in error all of the real and personal property which was in their possession on and prior to August 28, 1939. This order is based upon undisputed evidence introduced at the hearing upon the

application for a temporary injunction and as disclosed by the record now before us. If there are to be any further proceedings, the same must be consistent with the views herein expressed.

The judgment is reversed with directions.

MR. JUSTICE KNOUS and MR. JUSTICE GOUDY not participating.