The Seaboard Trust Company, individually and as trustee, filed its bill for, amongst other things, directions with respect to the proper disposition of the various rights, claims, priorities and extents thereof asserted by the respective defendants in and to certain assets by it held in trust. *Page 435 
The assets in question, constituting the subject-matter of the present controversy, consist of a $150,000 cash reserve fund set up and created by complainant — for the benefit and protection of the rights of certain creditors and certificate holders of the now defunct Steneck Trust Company, including the defendants composing the hereinafter mentioned second and third groups, the security underlying whose certificates had been unauthorizedly substituted — pursuant to its proposal of May 1st, 1933, to the commissioner of banking and insurance, as approved by an order of this court dated June 26th, 1933, for the acquisition of all of the assets and property of the defunct Steneck Trust Company then under his charge and administration by virtue of the provisions of the statute in such case made and provided, article III, section 2 of which proposal reads:
"The Seaboard Trust Company will set aside the sum of $150,000 in cash to satisfy in full the claims for moneys collected by said Steneck Trust Company, Frank H. Smith and William H. Kelly, as Commissioners of Banking and Insurance, since June 26, 1931, for the amounts due on bonds and mortgages held by said Steneck Trust Company, as Trustee, under the terms of an agreement between said Steneck Trust Company and Steneck Title Mortgage Guaranty Company, money so collected and credited in the agency accounts in said Steneck Trust Company, and for and in connection with the estates of infants, incompetents and decedents and for and on account of express trusts, and said Seaboard Trust Company will pay the balance of said $150,000, then remaining, to the various claimants as it may be finally determined and adjudicated are entitled to share therein in a suit now pending in the Court of Chancery of the State of New Jersey, wherein the Steneck Trust Company and the Commissioner are complainants, and Giovanna De Maio and others are defendants; such payment to be made in the proportions and shares finally determined in said suit. Such claimants shall be deemed general creditors for the balances remaining due to them respectively after the distribution of such trust funds. Said respective unpaid balances shall be satisfied by said Seaboard Trust Company in the same manner and in the same proportions as is set forth in subdivision C, Section 1, Article III hereof, for the satisfaction of the claims of depositors and other creditors. The percentages, however, are to be based on the unpaid balances."
and several real estate mortgages, underlying a number of mortgage participation certificates which had been issued by the said defunct trust company to the numerous defendants *Page 436 
herein and by virtue of which each of them have now asserted their respective rights and priorities in and to the said trust property.
Both convenience and clarity, in dealing with and disposing of the various rights and claims here asserted, require the separation and classification of the numerous parties involved into five different groups, viz.: First, those holding certificates, the only underlying security of which is the $11,000 first mortgage upon the smaller of the two parcels which constitute the so-called Hadley property; second, those holding certificates participating in mortgages which have heretofore been paid and canceled of record; third, those holding certificates participating in mortgages heretofore sold and assigned by said defunct trust company to the Steneck Title and Mortgage Guaranty Company; fourth, those holding participation certificates, the underlying security of which is therein specified to be a $141,000 mortgage on the two parcels here referred to as the Hadley property; and fifth, those holding certificates, the security underlying which is therein specified to be a $185,000 mortgage covering the said Hadley property.
First: As to the rights of the first group composed of defendants Josephine or Marty Shea and Herman Gerken, there is here no dispute that the $11,000 mortgage underlying their certificates covers only the smaller parcel of the so-called Hadley property and is a first and paramount lien thereon. As such, their status is separate and distinct from that of all other defendants with respect to this $11,000 mortgage wherein they, in so far as may be required to satisfy their respective certificates, are entitled to participate pro rata to the exclusion of all other defendants.
Second: As to the rights of the defendants Adolph or Nannie Grindberg, Lizette Muendel and Johanna Knobloch, who constitute the second group. It is insisted on their behalf, and not without merit, that the defunct trust company received and thereafter held the funds to it paid in satisfaction of the mortgages underlying their respective certificates in trust for their benefit and that they, by virtue of their said certificates, have the right to look to and participate *Page 437 
in the said $150,000 cash reserve fund and cannot legally, as urged by complainant, be relegated to the mortgage or mortgages on the so-called Hadley property for the satisfaction of the indebtednesses respectively due them. The evidence discloses that these defendants, in the order of the statement of their names, are the respective owners and holders of first mortgage certificates of the Steneck Trust Company in the sum of (1) $10,000, participating in a mortgage in a like sum on property located on Briar Way, Fort Lee, which mortgage was paid and canceled of record on February 10th, 1931; (2) $2,000, participating in a mortgage for $10,000 covering other property located on Briar Way, Fort Lee, which mortgage was paid on December 5th, 1930, and canceled of record on February 10th, 1931, and (3) $10,000, participating in a mortgage made by Union City Realty and Development Corporation to Adolph A. Floenig, and by the latter assigned to the Steneck Trust Company which mortgage was subsequently paid and canceled of record.
While it does not dispute any of the foregoing facts, complainant nevertheless insists that each of these defendants must look to and can only participate in the mortgages on the so-called Hadley property which it claims were substituted by the now defunct Steneck Trust Company as the security underlying their respective certificates in place and stead of each of the above mentioned paid and canceled mortgages. These defendants, however, contend that any such alleged or attempted substitution of underlying security was nugatory and ineffective because of the defunct trust company's lack of authority to do so.
There appears to be an absence of proof of a satisfying nature that the mortgages on the Hadley property or their accompanying bonds were ever definitely assigned by the defunct trust company to any of the certificates now held by these defendants, or that they were ever allocated to its trust department for the benefit of, and as the underlying security for, the said certificates, or that they were ever entered upon the trust mortgage register, or that the surrender of any of these defendants' certificates was ever procured, the performance *Page 438 
of all or some of which acts on the part of the defunct trust company appears, by the language of these defendants' respective certificates, to be essential in the effectuation of a valid substitution, an issue, however, which I need not, and therefore do not, here determine.
The evidence satisfies me that the alleged withdrawals and substitutions of securities underlying these defendants' participation certificates were made by Henry Steneck, president of the defunct trust company, and not by its board of directors or the executive committee of that board, which agencies alone were entrusted and charged with the duty of managing its affairs under the provisions of P.L. 1899 ch. 174 § 12 (1 Comp.Stat. p. 168 § 9), as amended by P.L. 1929 ch. 150 (Cum.Supp. Comp. Stat. 1925-1930 p. 1902 § 221-12), which reads:
"The affairs of every trust company shall be managed by a board of not less than five directors, who shall be elected annually by the stockholders at their annual meeting as hereinafter provided. A Majority of the board of directors shall constitute a quorum for the transaction of business; provided, that when the number of directors shall exceed nine they may designate by resolution nine members, any five of whom shall constitute a quorum, for the transaction of the business of the board. If as provided in the certificate of incorporation or by-laws, an executive committee may from time to time be appointed by the directors from among their members, which committee, subject to the provisions of the certificate of incorporation or by-laws, may exercise the powers of the directors in the management of the business affairs and property of the corporation during the intervals between the meetings of the directors."
Nor can I subscribe to nor adopt the theory, here advanced, that the president of this defunct trust company, virtuteofficii, was clothed and vested with the exercise of such broad and discretionary powers as, of necessity, the due withdrawal and substitution of the securities underlying these defendants' participation certificates invoked. It is undeniable that these powers were, by the terms of the contract as made between the defunct trust company and holders of its participation certificates, confided and reposed in the defunct trust company's board of directors or the executive committee between meetings of the former body. Hence, I am rather firmly inclined to the view that its president possessed only such *Page 439 
powers as either of those managing bodies or agencies had, within the limits of their power to so do, delegated to him. Stokes v.New Jersey Pottery Co., 46 N.J. Law 237; Mausert v. ChristianFeigenspan, 68 N.J. Eq. 671; Savoy Silk Manufacturing Co. v.Royal Piece Dye Works, 103 N.J. Law 137; Elfenbein v.Luckenback Terminals, Inc., 111 N.J. Law 67; Jennings,Receiver, v. Studebaker Sales Corp., 112 N.J. Law 399.
Inasmuch as it is not necessary in arriving at my final conclusions to determine whether either of these agencies had ever delegated to the president of the defunct trust company the exercise of the trust, confidence and discretion which these defendants had reposed in them; even if these agencies were, without the authority or consent of these defendants, legally capable of doing so (Titus Scudder v. Cairo FultonRailroad Co., 46 N.J. Law 393; Dwelling-House Insurance Co. v.Snyder, 59 N.J. Law 18); I pass both of these questions without decision.
Aside from the foregoing infirmities, the alleged substitutions here challenged cannot be sanctioned or sustained because these defendants, having purchased their respective certificates on the faith of the underlying first mortgage security therein described, cannot now, against their consent and approval and after the underlying mortgages have actually been paid and canceled, be compelled by the defunct trust company or its successor in interest to accept instead or in place thereof another or different type or character of security as the underlying investment of their funds; especially where, as here, the new form of security consists of two mortgages, one of which is a first lien on only a part of the mortgaged premises, and a second lien on the remainder thereof, and the other of which mortgages is a second lien on only a part of the mortgaged premises and a third lien on the remainder thereof. The inescapable result is that the alleged substitutions are without legal force as against these defendants who — in accordance with the provisions of section 2, article III of complainant's proposal, supra — are entitled to participate in the $150,000 cash reserve fund as the substituted security underlying their respective certificates. *Page 440 
 Third: As to the rights of the defendants Wilhelm Ostendorf, Sr., Virginia Klein Gallinant, William and Emma Franz and Elizabeth Maures, who constitute the third group. Each of these defendants, excepting Elizabeth Maures, asserts a right to participate in the said $150,000 cash reserve fund. In opposing their claims, complainant raises, in addition to the objections which it raised against the claims made by the defendants of the second group, the fact that the mortgages underlying the certificates held by these defendants were merely sold and not paid or canceled as were those underlying the certificates held by the second group of defendants.
The evidence unquestionably demonstrates that the defunct trust company received the sum of $9,000 for the assignment of several mortgages, amongst which were those underlying the certificates held by these defendants. The mere fact that this money was paid and received for the assignment instead of for a cancellation of these mortgages in nowise militates against or is inconsistent with the fact and legal theory that said money was received and held by the defunct trust company for the benefit of and in trust for the various holders whose certificates had been secured by said mortgages. To hold otherwise would be to attempt to draw a distinction between the second and third groups of defendants that would be illusory rather than real and without any legal difference.
It will serve no useful purpose to here restate that which has already been said regarding the ineffectiveness of the alleged substitution of security underlying the certificates held by the second group of defendants. It need but be said that all of those criticisms are equally applicable to the attempted substitution of security for the certificates held by the defendants constituting this, the third group.
Defendant Elizabeth Maures, while conceding the receipt of a notice from the now defunct trust company of the payment of the mortgage underlying her certificate and of that company's request that she give her consent and approval to its proposed substitution of security therefor by signing and returning the enclosed agreement to that effect, all of which she ignored; nevertheless insists that she should now be permitted to elect to ratify and approve the unauthorized substitution *Page 441 
on the part of the defunct trust company. Her doing so would, of necessity, result in the augmentation of the aggregate amount of the participation certificates issued and outstanding, excluding those amounting to $62,000 held by the defendants in this and the second group, against the so-called Hadley property mortgage from $136,500 to $145,500, or to the extent of $4,500 over and above $141,000, which is the maximum amount permitting an equitable and a pro rata participation by the holders of all certificates specifically issued against the security of the Hadley property, in accordance with the true intent and meaning of said certificates. To the extent of this excess, at least, the rights of certificate holders embraced within the fourth and fifth groups have already intervened and will be prejudicially affected if such choice or election be now accorded her; which, in view thereof, should be denied or at least curtailed to that extent.
Consequently, the certificate holders of the second and third groups are equally entitled to a pro rata participation in the said $150,000 reserve fund in accordance with the provisions under which it was created and is to be distributed; with a right, however, to defendant Elizabeth Maures, if she so chooses, to participate pro rata in the Hadley property security to the extent of $4,500, in which event she shall be entitled to a prorata participation in the $150,000 cash reserve fund only on the basis of holding a $4,500 instead of a $9,000 interest therein.
Fourth: As to the rights of certificate holders embraced in the fourth and fifth groups. While some of the certificates held by the persons in those two groups describe a $141,000 mortgage and others a $185,000 mortgage as their underlying security, the unquestionable fact, nevertheless, remains that the mortgage referred to and contemplated by all of said certificates is that which was executed and delivered by Nathan Weiss and wife to the New Jersey Title and Guarantee Company covering the so-called Hadley property for the sum of $185,000, the principal sum of which, at the time of its acquisition by the now defunct trust company from said mortgagee, had been reduced to the sum of $141,000. *Page 442 
Since the exclusion of the certificates held by persons classified in the second and third groups from participation in the Hadley property security to the extent hereinbefore indicated, automatically reduces the aggregate amount of outstanding certificates entitled to participation in said security to a sum not exceeding $141,000, a pro rata and equitable participation in said security, is thus afforded to each of the persons composing the fourth and fifth groups, without any resulting loss or detriment to any of the rights or interests which any of the others in said groups expected or are entitled to get under the provisions of the certificates which they purchased and now hold. Under these circumstances, equity favors equality and consequently each of the persons in these two groups are entitled to participate pro rata with all others of said groups in the Hadley property security, irrespective of whether such participation need be effected through the instrumentality of the $185,000 mortgage now reduced to $141,000, or by recourse to the title of said property acquired as a result of the foreclosure of the $78,500 mortgage, or both.
In view of the foregoing, the questions of priorities with respect to participation in said property and/or the said mortgages thereon — based upon the time of acquisition of certificates and/or the reference therein to the underlying security as being a $141,000 or a $185,000 mortgage, here raisedinter sese by the certificate holders comprising both of these groups — have become moot, academic and such as neither now require nor receive any determination by this court.
Fifth: As to complainant's own claim. Complainant asks the leave and sanction of this court to retain the following sums of money: $5,698.63, remitted by the rent receiver to the Steneck Trust Company in the foreclosure proceedings under the $78,500 mortgage on the so-called Hadley property, $2,297.19 which the said rent receiver had on deposit in the Steneck Trust Company at the time that the administration of its assets and affairs were taken over by the commissioner of banking and insurance, and which thereafter was transferred by said commissioner to complainant, $4,990.09 which *Page 443 
was accumulated from and during the management of said property under the supervision of the said commissioner, and $3,214.35, which is the net sum accumulated from and during the management of said property by complainant up to the filing of the present bill, and to apply all of said moneys in reimbursement protanto for the sum of $19,167.48 which, it claims, the Steneck Trust Company, prior to June 27th, 1931, had advanced for the benefit of said property and had capitalized and transferred to it as part of the defunct trust company's assets. Complainant also asks that it be decreed that it holds the existing mortgages on the Hadley property as well as the title to the property itself for the benefit of the proper parties defendant, subject, however, to its right as trustee for the moneys thus advanced.
It is conceded that the $19,167.48, consists solely of the moneys advanced by the Steneck Trust Company, over a long period of time prior to June 27th, 1931, for the purpose of paying interest to the holders of certificates the underlying security of which was the mortgages on the so-called Hadley property and on which mortgages the owners of the mortgaged premises had defaulted in the payment of interest. The advancements and payments thus made by the Steneck Trust Company were unquestionably made under and in accordance with its undertaking and agreement to that effect manifested by the following language of the certificates issued by it:
"The company guarantees to the holder, the successors, legal representatives and assigns of the holder, payment of the principal and interest of this certificate at the times hereinabove stated provided that if the principal of the mortgages is not paid on the said due date a further period, not exceeding eighteen months is granted in which to collect the principal, regular payments of interest, however, are guaranteed meanwhile."
Under the circumstances, it being admitted that the interest to pay which these advances were made was never actually collected from the owners of the property, complainants' claim must be disallowed.
A decree in conformity with the foregoing conclusions will be advised. *Page 444