The several complainants, alleging fraud, seek rescission of their purchase of mortgage participation certificates issued by the Steneck Trust Company in 1930 and 1931. *Page 568 
On April 17th, 1930, the Trust Company owned a bond and mortgage made by Nathan Weiss and wife to secure the sum of $185,000, dated March 8th, 1922. The principal sum had been reduced to $141,000, and the due date extended to April 1st, 1930. The mortgage was a first lien on a large apartment house on Hudson Boulevard, Weehawken, and was a second lien on adjacent premises known as 9 Columbia Terrace. The Trust Company also owned some claim or interest in a bond and mortgage dated January 29th, 1936, made by Mary E.M. Hadley to Garden Realty Corporation to secure $78,500, but reduced to $58,500. The Trust Company had paid to John Steneck Sons, Incorporated, an amount equal to principal and interest on this mortgage but had received no assignment thereof either from John Steneck Sons, or Garden Realty Corporation, or anyone else. This mortgage was a second lien on the apartment house property and a third lien on the Columbia Terrace property. Defendants deny issuing participation certificates against this mortgage either alone or in conjunction with the Weiss mortgage.
On April 25th, 1930, the Trust Company issued to the complainant Maurer a "first mortgage participation certificate" whereby it certified "that it has received the sum of $1,000 in consideration of which it hereby assigns unto Max Maurer (hereinafter termed `The Holder') an undivided interest to the extent of said sum, with interest thereon at the rate of five and one-half (5 1/2%) per cent. per annum, from the date hereof payable on the first days of February, May, August and November, in a certain mortgage given to secure payment of the sum of one hundred eighty-five thousand and 00/100 dollars, on which there is now owing the sum of one hundred eighty-five thousand and 00/100 dollars, which will be due on the 1st day of April, nineteen hundred and thirty-three, made by Mary E.M. Hadley to Steneck Trust Company, dated the 8th day of March, 1922, and recorded on the 8th day of March, 1922, in the office of the Register of the County of Hudson, in Liber 1098 of Mortgages, at page 98, covering No. 871/9 Hud. Blvd., also 1-7 Columbia Terrace, Weehawken, N.J. Together with an undivided interest to the *Page 569 
same extent in the bond or obligation described in said mortgage, which is deposited with the Trust Department of the company as Depositary for all holders of certificates of said mortgage. To have and to hold the same to the holder, and to the successors, legal representatives and assigns of the holder, subject to the terms hereof, which are hereby mutually agreed upon between the company and the holder. * * * The company is declared to be and is appointed irrevocably the agent and attorney of all holders of certificates of interest issued under said agreement and is empowered exclusively of all others: * * * to withdraw from deposit deposited bonds and mortgages and to substitute other first mortgages accompanied by policies of fire insurance in their place, to such an amount that the principal sum of all deposited bonds and mortgages shall never be less than the principal sum of the outstanding certificates of interest."
All parties agree that the mortgage intended to be described in the certificate is the Weiss mortgage despite the mistake in names, dates and amount "now owing." Similar certificates of participation in the Weiss mortgage were issued to the other complainants.
Much proof has been received of the circumstances leading up to the Trust Company's purchase of the Weiss mortgage from which complainants deduce a conspiracy ab initio to defraud them. The conclusion is not justified and that part of the proofs may be ignored save to show that Henry C. Steneck possessed an intimate knowledge of the entire situation surrounding the mortgage. The defendant John Steneck Sons appears in the case only in the transactions antedating the purchase of the mortgage. The same is true of the defendant George W. Steneck, except that he also signed some of the participation certificates, but this was purely routine. The bill will be dismissed as to these two defendants.
The first specification of fraud that needs consideration is that Henry C. Steneck caused participations totaling $198,550 to be issued and outstanding against this mortgage of only $141,000. Steneck, well knowing the amount due on the mortgage, made a certain entry in the records of the Trust *Page 570 
Company which, in the ordinary course of the company's business, would result in participations of $199,500 being sold and outstanding at the same time against the mortgage. That the intended result followed seems to appear from the books of the company which record certificates of $198,550 outstanding when the bank was closed by the commissioner of banking and insurance, June 27th, 1931. Defendant tries to refute this apparent overissue.
Under color of authority given to the Trust Company in the certificates to substitute mortgages, Steneck substituted the Weiss mortgage as the security underlying $62,000 of certificates which describe other mortgages and substituted other mortgages for the Weiss mortgage in $26,000 of certificates describing the latter. The sum of $198,550 includes the certificates for $62,000, but is the balance after deducting the certificates for $26,000.
In Seaboard Trust Co. v. Shea, 118 N.J. Eq. 433,
Vice-Chancellor Lewis considered the substitution of the Weiss mortgage for others, and held that the power of substitution was vested in the board of directors or the executive committee of the Trust Company and not in its president, and that the attempted substitution of the Weiss mortgage for other security in certificates amounting to $62,000, was void. Deducting these certificates, leaves a balance of only $136,550 outstanding, an amount less than the face of the mortgage, $141,000. Hence, says defendant, whatever his intent, complainants were not defrauded in this particular.
But it also appears that certificates of $26,000 held by members of the Steneck family were "switched" to other mortgages from the Weiss mortgage. The evidence in regard to these substitutions is the same as that relating to the certificates of $62,000. It is not shown that the substitution was authorized or ratified by the directors or the committee. But the holders of the $26,000 certificates consented; they claim no interest in the Weiss mortgage. I cannot hold, on the proofs before me, that such a claim will be made and be successful. I therefore conclude on this branch of the case that despite Steneck, the Weiss mortgage was not oversold. *Page 571 
The next specification is fraudulent concealment. Garden Realty Company began foreclosure of the second mortgage in December, 1929; Mrs. Hadley pleaded fraud; April 15th, 1930, a receiver was appointed to collect the rents. A decree in favor of the mortgagee was appealed and affirmed (Garden Realty Co. v.Hadley, 110 N.J. Eq. 474) and the property sold in the foreclosure case in 1932 after the commissioner of banking and insurance had taken charge of the affairs of the company.
The last payment of interest on the first, or Weiss, mortgage was made in the fall of 1929 and covered the period ending September 30th, 1929. Since then, no interest has been paid. At the time the certificate was sold to Maurer, the interest payments due January 1st and April 1st, 1930, were in default. Additional installments of interest were in default when the other certificates were issued. The principal sum on the mortgage was likewise in arrears after April 1st, 1930. Complainants contend that Steneck was under a duty to disclose this situation to them.
The Trust Company, under the direction of Steneck, had extensively advertised its participation certificates and had thus established the reputation of the certificates as conservative investments. Here are a few of the descriptive phrases:
"Average less than 60 per cent. of a modest valuation of the property. * * * Truly preferred investments. * * * Comparable to that of the highest grade bonds sought after by savings banks, insurance companies and trust estates. * * * The safest investment on earth. * * * Conservative policy and tested business methods."
Steneck having, by his advertisements, created public confidence in the certificates, put the Weiss mortgage in the mortgage department of the company with intent that participations therein would be sold to the public. He did so, knowing that interest and principal were in arrears and that the mortgaged property was in the hands of a receiver. Would he have been willing to advertise that such a mortgage underlay certificates? I think not. He knew that purchasers relied on the good faith and "conservative policy" *Page 572 
of his company. Confidence had been invited by him. He was under a duty to see that a purchaser of a participation in the Weiss mortgage was warned. His action was just as fraudulent as if he had personally sold certificates to complainants and at the time of sale had made the representations appearing in the advertisements and had failed to disclose the situation of the Weiss mortgage and of the property on which it was a lien.
Can complainants have relief in this suit?
The bill of complaint prays a rescission of the transactions between complainants and the Steneck Trust Company; that complainants' purchase of the certificates be annulled and that, upon complainants tendering delivery of their certificates endorsed for cancellation, the defendants be ordered to restore to complainants the purchase price.
The Trust Company, however, is not joined as a defendant. This omission is doubtless explained by the facts, pleaded in the bill, that on June 27th, 1931, the commissioner of banking and insurance took possession of the property of the company and thereupon the company ceased to function as a going concern and that it is now "defunct and insolvent and has no assets and that it is unable to respond to and render the complainants and other certificate holders similarly situated, whole."
In a suit for rescission and recovery of the purchase price, a decree for the sum fraudulently obtained may be made not only against the principal contracting party, but also against the agents who personally perpetrated the fraud. Vreeland v. NewJersey Stone Co., 29 N.J. Eq. 188; affirmed, Id. 651; Garrison
v. Electrical Works, 55 N.J. Eq. 708; Hubbard v. MercantileAgency, 68 N.J. Eq. 434; Pearlman v. Krasner, 103 N.J. Eq. 37;Kueper v. Pyramid B. M. Corp., 117 N.J. Eq. 110. A full discussion of the principles governing such cases appears inMack v. Letta (N.Y.), 71 N.E. Rep. 97. If objection had been promptly made, I would say there could be no recovery of the purchase price unless the corporation were a defendant, for the recovery is incidental to the rescission. Kueper v. Pyramid B. M. Corp., supra; Richeimer *Page 573 
v. Fischbein, 107 N.J. Eq. 493. But until the proofs had been taken and the cause came on for final argument, defendants made no objection to the non-joinder of the Trust Company or to the sufficiency of the cause of action against them set forth in the bill.
Jurisdiction in the present instance does not, however, rest on rescission. This is a case of fraud. While equity will not ordinarily assume jurisdiction in fraud cases, when the remedy at law is certain, adequate and complete, its right to do so cannot be questioned. Downs v. Jersey Central P. L. Co., 117 N.J. Eq. 138; Eggers v. Anderson, 63 N.J. Eq. 264. If the bill should be dismissed and complainants institute an action at law, they would likely be met by a plea of the statute of limitations. They should have relief in this court.
What is the measure of the recovery? In an action for deceit, the damages would be the difference between purchase price and actual value and in the absence of proof of the latter, there could be recovery. Lams v. Fish, 86 N.J. Law 321. There has been no proof in the present cause of the value of the participation certificates. In a suit for rescission, the court decrees a return of the entire purchase price so as to put the parties in statu quo. But it will be observed in such cases where there is a decree against officers or agents, there is no return of the statu quo to them. They are decreed to pay back that which they never had and must take a chance of voluntary reimbursement by the principal. A decree directing Steneck to pay to complainants the amounts they paid his company upon their tendering to him, duly endorsed, the certificates, would not be inequitable. If the certificates have value, he may realize on them. He is in no whit worse position than if the company were a defendant. Such will be the decree. *Page 574